[Crim. No. 2109. First Appellate District, Division Two.—September 16, 1940.]

THE PEOPLE, Respondent, v. MARK LEE MEGLAD-DERY, Jr., Appellant.

Leo R. Friedman for Appellant..

Earl Warren, Attorney-General, William F. Cleary, Deputy Attorney-General, Ralph E. Hoyt, District Attorney, J. F. Coakley, Chief Assistant District Attorney, and Nathan Harry Miller, Deputy District Attorney, for Respondent.

NOURSE, P. J.—The defendant was tried by a jury upon an indictment charging four separate violations of section

476a of the Penal Code. He was found guilty on each of the four counts of the indictment, and thereafter moved for a new trial as to each count. These motions were all denied, and the appeal is taken from those orders and from the judgment following the verdict.

Neither the appellant nor the respondent has complied with the court rule requiring a statement of the issues involved upon the appeal. The appellant has not made a statement of the facts upon which the judgment is founded. The respondent has made such a statement, which we find to be fairly in accord with the transcript, and from which we quote:

"Mark Lee Megladdery, Jr., the appellant, was private secretary to Governor Frank F. Merriam during the years 1935 to 1938 inclusive. On April 27, 1936, he opened an account with the main office of the Bank of America in Sacramento.

"It was the custom of the bank when a check was rejected for insufficient funds that a rejected check charge slip was prepared and a charge of fifty cents was made for each check rejected. This custom was also followed with respect to Megladdery's checks which were rejected, and at the end of each month the notices of check rejections and charges were mailed to him along with his bank statement.

"On December 24, 1937, Megladdery gave a check payable to cash for $60 to C. W. Wright, an Oakland druggist, which check is charged in the first count of the indictment and will in this brief frequently be called 'the first Wright check.' On this occasion Megladdery received some $15 in merchandise and the balance in cash. Wright then put the check through the bank, and it was rejected for insufficiency of funds. When Wright asked Megladdery about the check, Megladdery said that 'he would take care of it.'

"Megladdery passed the first Wright check in December, 1937. From the time he opened his account in the bank until December 1, 1937, sixty-six (66) checks that Megladdery uttered and delivered were rejected by the Bank of America because of insufficiency of funds in or credit with the bank, and he was notified at the end of each month of the specific checks rejected, the date of the rejection, and the fact that a charge of fifty-cents was made for each of such rejections.

"On June 25, 1938, Megladdery gave another check for $35, payable to cash to C. W. Wright, which check is charged

in the second count of the indictment and will in this brief frequently be called 'the second Wright check.' He received cash for this check. The check was put through the bank several times, but was returned unpaid. When Wright asked Megladdery for the money, Megladdery told Wright that he would pay the check, but up to the date of this trial on August 15, 1939, neither the first nor second Wright check had been paid.

"From December 1, 1937, the month in which Megladdery passed the first Wright check, to June 1, 1938, the month in which Megladdery passed the second Wright check, sixty (60) checks which Megladdery had uttered and delivered were rejected by the bank for insufficiency of funds. Megladdery was notified by mail that his checks had been rejected and that a charge of fifty cents had been made for each rejection.

"On July 8, 1938, Megladdery gave a check payable to cash in the sum of $30 to the Leamington Hotel, which check is charged in the third count of the indictment and will in this brief frequently be called the 'Leamington Hotel check.' Miss Mable Rea, an employee of the Leamington Hotel gave Megladdery cash for this check. The check was put through the bank but was rejected for insufficiency of funds. Several efforts were made to collect the check but without success. Several communications were addressed to Megladdery concerning the transaction which Megladdery ignored. More than five months after the indictment was returned on July 15, 1939, someone came in and paid the $30 check on behalf of Megladdery.

"From June 1, 1938, the month in which Megladdery passed the second Wright check, to July 1, 1938, the month in which Megladdery passed the Leamington Hotel check, fifteen (15) checks which Megladdery had uttered and delivered were rejected by the bank for insufficiency of funds. Megladdery was notified by mail that his checks had been rejected and that a charge of fifty cents had been made for each rejection.

"Megladdery gave a check dated September 1, 1938, in the sum of $115.11 to the Firestone Supply Company, which check is charged in the fourth count in the indictment and will in this brief frequently be called 'the Firestone check.' The check was received by the Firestone Company on September 2d, but when it was deposited in the bank it was returned with the notation 'Insufficient Funds and Account Attached.'

"The details of this transaction indicate the intent of the defendant at the time of his passing the Firestone check. In the early part of January, 1938, Louis A. Alborelli was Manager of the State Department of Motor Vehicles for Alameda and Contra Costa counties. Megladdery asked Alborelli where the state purchased tires and was told by Alborelli that tires were purchased from the Firestone Company. Megladdery then asked Alborelli to speak to Mr. Gordon, the manager of the Firestone Company, and tell him that he, Megladdery, wanted to purchase some tires for some friend. This Alborelli did. On January 24, 1938, a woman came to the Firestone store in Oakland and introduced herself as Mrs. Jackson and presented a letter from Megladdery, written on the stationery of the governor's office, which letter Megladdery admitted writing.

"The tires were put on a Cadillac automobile, 1937 license number 8D 66. The woman who drove the car and signed her name as M. E. Jackson, when she received the tires was not Mrs. Jackson, but was one Helen Devine.

"For the limited purpose of showing fraudulent intent, it was shown that seven bills for the tires were mailed to Megladdery, but Megladdery ignored them. Five letters were written to Megladdery which Megladdery likewise ignored. Members of the Firestone Company staff called on Megladdery at the governor's office numerous times for the payment of this bill, but he evaded them. Finally, on August 17, 1938, two representatives of the Firestone Company contacted Megladdery. He stated that he had contacted his Oakland office with instructions to mail them a check. When the check failed to come, the Firestone Company contacted Megladdery on September 1st, at which time he told them that the check was being put in the mail that day.

"From July 1, 1938, the month in which Megladdery passed the Leamington Hotel check, to September 1, 1938, the month in which Megladdery passed the Firestone check, forty-five (45) checks which Megladdery had uttered and delivered during the months of July and August, 1938, were rejected by the bank for insufficiency of funds. Megladdery was notified by mail that his checks had been rejected and that a charge of fifty cents had been made for each rejection.

"For the limited purpose of showing that Megladdery had knowledge that the checks which he had passed were returned unpaid, and for the purpose of showing that passing the

checks without funds was in pursuance of a plan or scheme on the part of Megladdery to exploit his official position for the purpose of obtaining money or property by fraud and false pretenses testimony was admitted to show the dealings between several individuals and Megladdery.

"Mr. E. H. Johnston of the Bank of America testified concerning approximately 245 of Megladdery's checks which the bank rejected for insufficiency of funds. In some instances the amounts of the checks rejected are the same and possibly the same check was rejected more than once but that is conjectural and the bank officials could not state that the checks were identical.

"Megladdery admitted that he knew that some of his checks had been rejected but had never gone to Mr. Vandenberg, or anyone else at the bank to inquire the reason for it; that monthly statements from the bank reached him right after the first of the month.

"He also admitted that J. I. MacDonald told him about the rejection of the check by the bank; that Mr. Yount advised him of the rejection of his $35 check in October, 1937; that on some occasions he post dated checks for small amounts; that various people called his attention to the fact that his checks had been rejected.

"Megladdery admitted that he assisted C. W. Wright to get an appointment to the State Pharmacy Board and also assisted Phil Riley, manager of the Leamington Hotel, to get an appointment to the State Board of Agriculture."

The appellant first complains of the order overruling his demurrer to the indictment which charged the defendant with uttering and delivering the several checks "with intent to defraud" the payee "knowing at the time of such making . . . that he had not sufficient funds in or credit with said bank to meet the said check and draft in full." It is contended that the charging part of the indictment was insufficient because it did not contain the words "upon its presentation" in the words of section 476a of the Penal Code. These words are plainly superfluous. "Payment of a check involves its full, and not partial, payment when presented." (*People* v. *Westerdahl*, 316 Ill. 86 [146 N. E. 737, 739].) "The gist of the offense is the fraudulent intent with which the check was drawn or delivered and knowledge by the person issuing it that *at the time* he was without funds or credit in the bank upon which the check was so drawn." (*People* v.

*Bullock*, 123 Cal. App. 299, 304 [11 Pac. (2d) 441]; *People* v. *Sherman*, 100 Cal. App. 587, 590 [280 Pac. 708]; *People* v. *Zimmer*, 23 Cal. App. (2d) 581, 585 [73 Pac. (2d) 923].) There is no substantial difference between the words "to meet the said check in full" and "for the payment of such check . . . in full upon its presentation." To provide funds in, or credit with, the bank "to meet the check" can mean nothing else than to provide for its payment "upon presentation."

■ Objection is made to the admission of the evidence taken from the records of the bank showing the circumstances concerning approximately 245 of Megladdery's checks which the bank rejected for insufficiency of funds over a period of about two years. The appellant's complaint is that the state did not prove that these checks were written by him, and did not prove to whom they were payable or delivered. Such proof was not necessary. The evidence was admitted for the limited purpose of proving appellant's knowledge that he did not have sufficient credit with the bank to meet the checks involved in the indictment. Throughout the trial the appellant maintained that he had made an arrangement with the manager of the bank upon which the checks were drawn whereby he would be permitted to overdraw his personal account in return for his having used the influence of his official position to have public moneys transferred to such bank for deposit. He testified that, because of this arrangement, he was justified in believing that the bank was extending him credit, and that the checks mentioned in the indictment would be paid by the bank upon presentation, notwithstanding the condition of his account. To meet this fantastic testimony the state offered evidence directly denying that any such arrangement had been made by the bank, directly denying that any credit was extended him by the bank, and proving that over a period of about two years the bank notified the appellant on every occasion when his account was overdrawn and charged him fifty cents for each occasion. As part of this line of proof officers of the bank were permitted to testify from the books of the bank concerning the numerous overdrafts occasioned by the presentation of checks with insufficient funds for payment. This evidence was not offered to prove other and similar offenses, hence, it was not necessary to identify each check and prove the signature of appellant, or that there was not in fact sufficient funds to meet payment at the time. It was sufficient to show that the bank so noti-

fied appellant and that it thereby informed him that he had no credit during the period when he issued the checks named in the indictment, and that, throughout that period his checks were not being honored by the bank. This information officially conveyed to the appellant by the bank was direct evidence of his knowledge of his lack of credit and for that reason was clearly admissible. (20 Am. Jur., pp. 312, 313; 22 C. J., p. 284; *People* v. *Cortze,* 108 Cal. App. 111, 114 [290 Pac. 1083].)

 Appellant complains of the refusal to give his proposed instruction telling the jury that, with regard to these other checks, unless the evidence established to a moral certainty and beyond a reasonable doubt "all the essential elements of the offense" denounced by the Penal Code, the defendant was entitled to the presumption of innocence and that it was the "duty" of the jury to find that the defendant "did not issue any of such checks with intent to defraud". The proposed instruction was properly refused as it did not state the law upon any issue involved in the trial. The evidence showing that these other checks had been issued did not purport to be evidence showing the commission of another criminal offense. It was admitted to show knowledge of the condition of appellant's dealings with the bank and to rebut appellant's special defense that he believed he had credit with the bank to take care of all checks. As part of the state's showing in this connection an officer of the bank testified that he frequently notified appellant that his account was overdrawn, and that each month a statement was sent to appellant showing the number and amount of unpaid checks charged to his account. The simplest way of proving knowledge is to show that the individual was given direct information of the matter in issue, either by the spoken or written word. If the information so conveyed tends to show that the defendant was guilty of some other crime it is nevertheless admissible for the limited purpose of showing that such information was conveyed to the defendant and that he thereby had knowledge of the circumstances in issue. But the jury is not to find the defendant either guilty or not guilty of the other offenses; it is not to give him the presumption of innocence, or the benefit of a reasonable doubt. It is to apply the evidence for the sole purpose of determining whether knowledge was had of the circumstances in issue. To this effect, and for this purpose, the instructions given were care-

fully drawn. The particular issue covering these other checks was fully covered by correct instructions properly given, and that proposed by appellant was properly refused in that it did not state the law in any particular.

For the same purpose of showing appellant's knowledge of his standing at the bank, the state offered two checks which appellant gave to C. W. Wright, one in May, 1937, and the other in September, 1937. The May check was for $250 representing a loan made appellant by Wright on appellant's statement that the check "will be good right after the first of next month", and "don't put it in until I will let you know, and I will let you know when it is good". The second check was for the same amount and was given in August in exchange for the May check which appellant said was "a little old". The second check was nearly two years old at the time of the trial, and the payee was still without his money. All this testimony strongly tended to show appellant's knowledge of his bank account, and went to prove the fraudulent intent with which the checks named in the indictment were issued. The same may be said regarding the testimony of the witnesses Ogle and Yount. Here testimony was insufficient to prove a violation of section 476a, but it was clearly pertinent and competent evidence to meet the special defense of a prearranged credit.

The appellant makes the usual criticism of the conduct of the assistant district attorney. It would serve no purpose to refer to these matters in detail or to reprint the remarks objected to. Stress is placed upon the objection to the remark relating to the appellant's use of his official position with the governor to "shake down" those having business with the governor's office, and to create situations whereby he was able to receive bribes from such persons. The appellant had been tried in the same county on charges of soliciting and receiving a bribe as secretary to the governor, and, on May 1, 1939, was convicted of the charge, but was granted a new trial. He now asserts that it was a matter of common knowledge among the people of Alameda County that the appellant was charged with such offenses, and assumes that there might have been some prejudice to him when the district attorney made these remarks. In the light of all the circumstances it does not appear that the appellant could have been prejudiced by the district attorney's remarks to the jury when we bear in mind that the evidence in this case

disclosed the political background of the check transactions between appellant and Wright, the Firestone tire deal, and the insistent claim of appellant that he had used his official position to make an illegal deal with the bank whereby the latter would illegally extend him credit. In thus referring to "shake down" and interest in "bribery" the district attorney was within the record. In the only instance when the prosecutor stepped beyond the record the admonition of the trial court, followed by the instruction to the jury erased all possible claim of prejudice.

 The argument that the evidence was insufficient to support the verdict does not require extended treatment. The appellant admitted that he issued the several checks without sufficient funds for their payment. His answer was that he had arranged credit through which he believed the checks would be paid. All the witnesses called denied this assertion and all the circumstances proved the falsity of the defense. On this appeal we must assume that the jury believed the witnesses called by the state. Under such a case it is useless to argue that the evidence was insufficient to support the verdict.

 The appellant urges that the court had no jurisdiction over the offense set forth in the fourth count because the check involved in that count was written in Sacramento and there mailed to the payee addressed to Oakland. Such was the testimony of the appellant, but other witnesses gave conflicting testimony from which the jury could have found that the check was mailed in Oakland, Alameda County. Furthermore, the question is answered by section 781 of the Penal Code which provides: "When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county." (See *People* v. *Boggess*, 194 Cal. 212, 220 [228 Pac. 448]; *People* v. *Twedt*, 1 Cal. (2d) 392, 397 [35 Pac. (2d) 324]; *People* v. *Thorn*, 138 Cal. App. 714, 732 [33 Pac. (2d) 5].)

 The appellant complains of the refusal of the trial court to give his proposed instruction to the effect that "ability and honest intention to deposit sufficient funds in the bank to meet the check in full upon its presentation in due course of business constitutes a defense to the charge". The

proposed instruction was properly refused. The appellant did not raise that defense, and there was no evidence upon which the instruction could be founded. There is a wide difference between financial ability and honest intentions, and the prearranged credit with the bank to which the code section refers.

■ Appellant complains of the refusal of the trial court to give his proposed instruction relating to actual and constructive knowledge. The proposal is not a correct statement of the law. A jury is entitled to draw inferences from the facts proved in a criminal case as well as in a civil case. Where facts are in evidence from which knowledge of another fact might be inferred, it would be error to tell the jury that actual knowledge alone must be proved. (*People v. Juehling,* 10 Cal. App. (2d) 527, 531 ]52 Pac. (2d) 520].) And there is no error in refusing to give an instruction as a whole which contains substantial matter not in accordance with the law. (*People v. Woollacott,* 80 Cal. App. 275, 278 [251 Pac. 826].)

The judgment and the orders denying a new trial are each affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court October 14, 1940. Carter, J., voted for a hearing.