[Crim. No. 3849.   Second Dist., Div. Three.   Apr. 4, 1945.]

THE PEOPLE, Respondent, v. FRANK LA ROCCA,
Appellant.

Gladys Towles Root for Appellant.

Robert W. Kenny, Attorney General, and Carl S. Kegley, Deputy Attorney General, for Respondent.

DESMOND, P. J.—The defendant in this case was convicted in a jury-waived trial of grand theft from the person, a felony. He appeals from the judgment and also from the order of the court denying his motion for new trial. He contends that the evidence is insufficient to support the judgment. A survey of the record does not sustain his contention. This record consists of the transcript of testimony taken at the preliminary hearing in this case, which it was stipulated the court might read, and also a transcript of additional testimony taken in the superior court.

One Marksbury testified that on August 28, 1943, at about 6:15 p. m., he boarded a crowded streetcar headed north on Main Street, at the corner of Fifth Street, in the city of Los Angeles; that he had upon his person a wallet or billfold containing a number of bills. Almost immediately after boarding the car he was jostled from behind and he missed his wallet from the left rear pocket of his trousers. Noticing the defendant just stepping off the car, he followed in a hurry, and as he reached the ground called to the defendant, saying he wished to speak to him. The defendant, however, ignored the call and started to run in a southerly direction. Marksbury pursued him and they ran diagonally across the street to the west sidewalk and south upon the sidewalk and then through a parking lot where the defendant disappeared from view. As they were racing across Main Street, two officers in a police car were traveling south upon that thoroughfare, immediately behind the two men, and when they arrived at the parking lot, parked their car and began a search for the defendant. He was found in a rest room at the rear of a restaurant at 549 South Main Street, arrested and taken to jail. Upon being searched he was found to have currency in three different pockets of his trousers: in the left hand pocket he had bills totaling the sum of $200; in the watch pocket, bills totaling $37; in the right hand trouser pocket, two crumpled dollar bills.

Marksbury, at the preliminary hearing in this case, testified that his wallet at the time his pocket was picked contained bills aggregating $37. The record reads as follows:

"Q. At the time that you claim you had $39.00 in that bill-

fold, what were the denominations of the money? . . . A. I am not exactly certain. I do know there was $37.00 not $39.00. Q. You told the police officers you had five five's didn't you? A. I told the police officers I had some tens and fives. . . . Q. Isn't it true you told the police officers you had five five dollar bills? A. It is not. Q. How many tens did you tell them you thought you had? A. I told them I thought I had three tens. Q. And one five? A. And one five. Q. And the rest was in one dollar bills? A. Yes, ma'am.''

Officer Tyndall, who searched the defendant, testified as follows:

''Q. The denomination you found on the defendant as to the $37.00 in one pocket, was a twenty and a ten, wasn't it, and then the rest were in one dollar bills? A. It was $37.00 in one pocket and two one dollars separate. Q. But that denomination was a twenty dollar bill and a ten dollar bill and the rest in ones, wasn't it? A. I wouldn't swear to it. Q. Well, do you recall what the denomination was? A. No, I wouldn't want to say.''

The other officer, Mr. Swan, testifying in the superior court, stated that the money found upon the defendant was held for evidence, one package containing $200 in bills and the other $39, consisting of one $20 bill, a $10 bill and nine $1.00 bills. He testified that Marksbury told him that the $37 in his wallet consisted of three $10 bills, one $5.00 bill and two $1.00 bills. The officer stated: ''At the time I talked to Mr. Marksbury I didn't know the denominations of the money that was booked in the property clerk's office so then I checked on that and found that there was $39.00 over there, consisting of one twenty dollar bill, a ten dollar bill and nine one dollar bills. . . . I asked him [Marksbury] again if he was sure what the denominations of the money was that was in the billfold. He said he absolutely knew exactly what the denominations were because he had been to the Thrifty store and made some purchases and when he got his money back he put his money in his billfold and he knew exactly and he was positive that he had three ten dollar bills, a five dollar bill and two one dollar bills.''

At the trial in the superior court, Mr. Marksbury was asked: ''What is your recollection as to how it was formed, that is, in what size of bills? A. Well, as near as I can recollect, the currency was the same as Mr. Swan stated it was, three ten dollar bills, a five dollar bill and two one dollar bills.

Now it could have been other money, could have been other denominations.''

In this statement Marksbury was mistaken for, as we have seen, Mr. Swan did not state that the currency was in three $10 bills, a $5.00 bill and two $1.00 bills, he merely quoted Marksbury as having made that statement and testified that upon his own examination of the package containing currency, he found one $20 bill, a $10 bill and nine $1.00 bills.

It is apparent from this review of the testimony concerning the denomination of various bills that the matter was somewhat confusing, but it is to be noted that in his very first answer on this subject at the preliminary hearing Marksbury stated that ''I am not exactly certain'' of the denominations, and in the last inquiry, which took place in the superior court, while repeating his original impression as to the denominations, completed his statement by saying, ''Now it could have been other money, it could have been other denominations.''

The trial court's view on this subject appears from his comment, ''The only thing which is stressed here particularly is the denominations of money, which, so far as I can determine, the victim has never been categorically certain of—he thinks that it was a certain sum, which apparently varies from that *that* [which?] was found; he never did vary from the fact that he had $37 and he didn't have $39.''

The defendant did not testify at the preliminary hearing, but took the stand in the superior court. He stated that on August 28th he had $200 in a secret pocket, $37 in his right hand watch pocket and $2.00 and some change. He denied that he took Marksbury's billfold or any money from him. He admitted that he had served time in the state penitentiary for grand theft from the person and also a term for grand larceny. He stated that he was getting on the streetcar at Fifth and Main Streets and being asked, ''what was your purpose in getting off the street car immediately this incident happened?'' stated that he saw somebody taking Marksbury's pocketbook and ''I figured if the man turned around and accused me I would have a hard time convincing him I didn't take it.'' He admitted that he told Officer Tyndall that the reason he got off the streetcar was because he thought he was being pursued by a ''bunch of pachuchos.'' He further testified that he told this story to Tyndall because he did not want

to expose his record and for the same reason denied that he had suffered a previous arrest. He testified he did not attempt to advise Marksbury that somebody was taking his pocket-book; "I was scared when I seen what went on there I got off the car . . . after I had gotten on the street car and the man looked at me, I was scared then and I ran. Q. And you passed right near the spot where the pocketbook was later found, didn't you? A. I don't know where the pocketbook was found, but I ran down south on Main Street."

Testimony had previously been given by Tyndall that shortly after the defendant was taken to the police station this officer made a search in the neighborhood of Fifth and Main Streets and found Marksbury's wallet, containing identifying papers but no currency, lying in the gutter in front of 535 South Main Street, at a point where the defendant was running, just north of the parking lot which has been mentioned.

The appellant, arguing that there was a failure to prove by credible evidence that the theft had been committed cites us to *People* v. *Edwards* (1925), 72 Cal.App. 102 [236 P. 944], where the court discourses upon the essential elements of the crime of larceny, namely, the taking and asportation of property of another with felonious intent. Under that rule, and the additional element that in this case the theft was charged to have been committed from the person of Mr. Marksbury, can it be said that the judgment was without evidence to support it? We think not. Just as a jury is entitled to draw inferences from the facts proved in a criminal case (*People* v. *Megladdery* (1940), 40 Cal.App.2d 643, 653 [105 P.2d 385]), so a judge sitting without a jury has the same right and his conclusions may not be lightly disturbed. In *People* v. *Newland* (1940), 15 Cal.2d 678 [104 P.2d 778], the court said (p. 681) : "The rule applicable where there is evidence, circumstantial or otherwise, that a crime has been committed and that the defendant was the perpetrator thereof, has been many times reiterated by the reviewing courts of this state as follows: The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before

the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.' '' Somewhat the same idea was expressed in *People* v. *Mercado* (1922), 59 Cal.App. 69 [209 P. 1035]. In that case the appellate court stated its position in the following language (p. 70): "This court, as we have often said, will not weigh the testimony of witnesses where there is sufficient evidence, if believed by the jury, to justify the verdict. We will reverse a judgment on the ground of the insufficiency of the evidence only when, giving full credence to all the inculpatory evidence, it falls short of that which the law requires. In view of this well-settled rule, we think there was ample evidence to justify the conviction."

As applied to the facts and circumstances of the instant case, we might well adopt the closing sentence of this statement.

Judgment and order affirmed.

Shinn, J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 3, 1945.