[Crim. No. 6168. Second Dist., Div. One. July 17, 1958.]

THE PEOPLE, Respondent, v. EDWARD CROXTON, Appellant.

Al Matthews for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was charged by information with seven counts of issuing checks without sufficient funds in violation of section 476a of the Penal Code. The jury convicted him on all counts and he was sentenced to the state prison on count one, the trial court having dismissed the other six.

Although defendant has appealed from the verdict of the jury, the decision of the court and the judgment and sentence, an appeal lies only from the judgment of conviction; and the attempted appeal from the verdict of the jury, decision of the court, and sentence, must be dismissed. (Pen. Code, sec. 1237; *People* v. *Tallman,* 27 Cal.2d 209 [163 P.2d 857]; *People* v. *Falk,* 113 Cal.App.2d 857 [249 P.2d 60].)

This appeal involves count one charging defendant with issuing a $29.29 check on the Security-First National Bank, Western and Santa Monica Branch, with intent to cheat and defraud Bill Day, Koontz Hardware and the bank, knowing he did not have sufficient funds in, or credit with, the bank to meet the check in full upon its presentation for payment. Appellant's sole contention is that the evidence failed to show an intent to defraud and that he could not have defrauded the complaining witness.

Viewing the evidence in the light most favorable to the prosecution, as we are required to do on an appeal from a criminal conviction, the record reflects that during the month of June, 1957, neither defendant nor Rim of the World had an account or arrangement of credit with the Security-First National Bank. On June 15, 1957, defendant and W. J. Ashe selected some merchandise in the Koontz Hardware store which they told the salesman, Bill Day, was to be used in the business of the Rim of the World. Defendant, in Day's presence, wrote the face of the check and presented it to him for the merchandise. He did not tell him it was not a good check, or that there was no money in the bank to cover it. On Monday, June 17, 1957, Day received a telephone call from the defendant who said he wanted to replace the check with one on the printed form of Rim of the World and asked him

to hold it until the next day for that purpose. The following day he received another call asking him to hold the check until Wednesday. On Wednesday defendant called again and Day promised to hold the check until Thursday, but gave no indication he would hold it longer.

On July 2, 1957, sheriff's deputy Sergeant Ostraff, investigating various checks purportedly written and signed by defendant, asked him if he had an account in any bank. Defendant said he did not but that "they" were opening one that day in the Bank of America, Sunset and Laurel Branch. When asked if he had written any checks on any other banks, defendant replied that he had not. Upon being shown the check in question, defendant then said that "they" were that day supposed to open an account in the Security-First National Bank, too, but did not know whether he had written any check on any other bank. When asked where the money was coming from to open the accounts, defendant said he did not know, nor could he say whether they would be in his own name or that of the Rim of the World.

On July 3, 1957, sheriff's deputy Sergeant Knowles talked to defendant at the sheriff's station. Defendant told him that he and Ashe had purchased certain items at Koontz Hardware for the manufacture of furniture on the Rim of the World premises. He tried to open a charge account there but could not. He then produced the check, although he had no account at the bank in question in his name or that of Rim of the World at that time. He knew the check was not good but told the clerk to hold it because they were in the process of organizing the Rim of the World business and establishing a bank account in that bank. He said he had never had an account at the Security-First National Bank.

Again, on the day of the preliminary hearing, defendant told Knowles he knew at the time he presented the check there were no funds in the bank on which it was written.

At the trial Ashe testified that defendant assured him the check would be made good on Monday; subsequently told him that the people at Koontz Hardware would hold the check and that Luke Pachalis was going to give him $1,500. Later, defendant said that Pachalis was having trouble raising the money.

Defendant, previously convicted of issuing checks without sufficient funds, testified that he did not intend to defraud or cheat anyone and that at the time he wrote the check he was expecting a loan from Mr. Pachalis, but that Pachalis

had difficulty raising the money. He notified Mr. Day of this who said he would hold the check. He stated that when he and Ashe were in Koontz Hardware, he told Day they needed material but had no money and were just starting out in business; that Day gave him a card to fill out for a credit reference to open an account; and that then he gave him the check. He thought he was getting the money on Monday and could make the check good, but when he could not he called Mr. Day for an extension of time, which Day gave him. He further testified that he told Day at the time he gave him the check they were having trouble establishing credit. However, upon being confronted by the district attorney with Day's testimony that at no time did defendant tell him that the check was not good, defendant then changed his testimony and testified that after all he did not believe it was Mr. Day who waited on them. Defendant stated that another person than Pachalis was to lend him money and that he was going to open accounts in three banks but did not go to them to ask for credit because of the dilapidated condition of the building. He said he was confused and nervous while talking to Sergeant Ostraff and did not know what he told him, but that he did say some people were at the Security Bank opening an account and that he had heard from them on Monday and that they said they would take care of the checks. He denied telling Ostraff that he did not know where the money was coming from to open the account and testified that he had an appointment on that afternoon with a man who was to lend him money. Defendant did not call Mr. Pachalis as a witness.

In urging that the evidence failed to show an intent to defraud, appellant is asking this court to reweigh the testimony, reevaluate the credibility of the witnesses and draw inferences contrary to those drawn by the jury. ▮ The court in *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778], laid down the general rule to be followed by appellate courts in considering the claim of insufficiency of the evidence, at page 681: "The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. ▮ For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial

court, can be set aside on appeal upon the ground 'of insufficiency of the evidence,' it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . . ██ We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' ██ If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.''

Appellant contends that he could not have defrauded the complaining witness because he was trying to start a business on a shoestring and told him so; that the materials obtained from Koontz Hardware were taken only a short distance and could have been retrieved; that the materials were never disposed of or concealed and that Koontz Hardware suffered no loss. On the issue of reasonable expectation of payment, appellant argues that the evidence negates any intent to defraud in that it shows he had a reasonable expectation of financial aid from one Whitman and Pachalis.

██ In connection with defendant's alleged difficulties in financing the business and the lack of loss on the part of the complaining witness, the court had this to say in the case of *People* v. *Cortze*, 108 Cal.App. 111, at page 114 [290 P. 1083] : ''It has been repeatedly held, however, that when a fictitious check has been drawn, issued and delivered to the payee with intent to defraud, and there is no money in the bank with which to pay the same, and the drawer has knowledge of such want of funds, the crime is complete, even though the person to whom the check is delivered suffers no financial detriment thereby. In other words, the intent of the person who issues the check, contrary to the provisions of section 476a of the Penal Code, cannot be made to depend upon the success of his enterprise. (*People* v. *Williams*, 69 Cal.App. 169 [230 P. 667]; *People* v. *Kahn*, 41 Cal.App. 393 [182 P. 803]; *People* v. *Sherman*, 100 Cal.App. 587 [280 P. 708]; *People* v. *Bowles*, 100 Cal.App. 464 [280 P. 184].)''

██ Appellant's claim that he had a reasonable expectation of financial help is not borne out by the evidence. As to Whitman's offer to stand good for certain articles and back him in his business, defendant's own testimony shows that

Whitman's willingness to aid him was limited primarily to providing material through an account at Akron Hardware and his promise that if he was successful in the business, he would back him. Mr. Whitman in his own testimony denied this. The promise of financial aid from Pachalis is as nebulous and ill-founded. When first questioned by Sergeant Ostraff about how he intended to cover the check, defendant said he didn't know from where the money was coming. It wasn't until after his arrest defendant first injected the name of Pachalis and the proposed loan. The evidence concerning the matter of the loan is very brief and Mr. Pachalis was not called to substantiate defendant's claim. Appellant cites *People* v. *Griffith,* 120 Cal.App.2d 873 [262 P.2d 355], and other authorities for the proposition that reasonable expectation of payment of a check constitutes a good defense. With these authorities there is no quarrel, but in the instant case there is in the record not only ample evidence of deception on defendant's part, but the jury, as it had a right to do, rejected defendant's testimony that he had any expectation of loans or financial backing, gave no credence to defendant's denial he had an intent to defraud and found the requisite fraudulent intent. A similar situation was discussed by the court in *People* v. *Stein,* 157 Cal.App.2d 259 [320 P.2d 519], wherein appellant contended that the intent to defraud was lacking because there was a reasonable expectation of payment. In upholding the judgment of conviction and citing section 476a of the Penal Code, the court said, at page 265: "During a period of several weeks before and after the making and delivery of the check, the defendant did not have sufficient funds in the bank for the payment of the check. No part of the check has been paid. The evidence was sufficient to prove fraudulent intent on the part of defendant in issuing the check." In the instant case at no time during the month of June did defendant have any funds or arrangements for credit with the bank on which the June 15th check was written. From this, together with other evidence in the record, the jury could have reasonably inferred the requisite intent to defraud. The Griffith case was cited by appellant in *People* v. *Whisenhunt,* 155 Cal.App.2d 534, and the court said, at page 537 [318 P.2d 153]: "In support of his contention that the evidence is insufficient to support the judgment, appellant argues that the evidence establishes that there was a lack of intent to defraud because when he issued the two checks in

question he intended to make a deposit in his account sufficient to cover the amount of the checks prior to the time that the checks could be presented to the bank during the ordinary course of business and also at the time he presented the two checks he informed the payees that there were insufficient funds at the time and asked them to hold the checks for several days in order to permit him to make the necessary deposit. Appellant relies upon the cases of *People* v. *Griffith,* 120 Cal.App.2d 873 [262 P.2d 355], and *People* v. *Wilkins,* 67 Cal.App. 758 [228 P. 367], in which it was held that where the evidence establishes that the drawer informed the payee that there were insufficient funds to cover the check, such fact precludes a finding of guilt upon a charge of violating Penal Code, section 476a.

''Respondent does not take issue with these decisions but points out that in the instant case there is sufficient evidence upon which the jury could conclude and obviously did conclude that the statements of the appellant at the time he passed the checks in question were different from those which he related at the trial. . . .''

In the instant case defendant testified that at the time he gave the check to Mr. Day he told him he had no money and was having trouble establishing credit and asked him to delay cashing the check. To the contrary, Mr. Day testified that nothing was said by defendant about the check not being good or that there was no money in the bank. Defendant further testified that on Monday after he gave Mr. Day the check, he called him and asked him to hold the check because he was having trouble getting the money. Mr. Day stated that the only reason given to him for asking him to hold the check was that defendant wished to replace it with one on the printed form of Rim of the World. Defendant testified he was expecting a loan with which to open an account, whereas Sergeant Ostraff testified that defendant told him he did not know from where the money was coming. The jury not only resolved these discrepancies and other conflicts in his testimony adverse to the defendant, but it also had before it for its consideration certain statements of the defendant, if found by it to be false and contradictory in nature, as evidence of consciousness of guilt. (*People* v. *Porter,* 105 Cal.App.2d 324 [233 P.2d 102]; *People* v. *Turner,* 86 Cal.App.2d 791 [195 P.2d 809]; *People* v. *Darrow,* 212 Cal. 167 [298 P. 1].) In this connection is defendant's denial to Sergeant Ostraff that he had written checks on any banks other than the Bank

of America. Also significant was defendant's detailed testimony at the trial regarding his conversation with Mr. Day at the time he gave him the check wherein he asked him to hold it, and then his statement that he did not believe that it was Mr. Day who waited on him when confronted with Day's testimony that at no time did defendant say to him that the check was not good.

It is, of course, for the trier of the fact to resolve conflicts in the evidence and determine what facts are established and what inferences may be drawn therefrom. The authorities are clear that if the circumstances reasonably justify the verdict the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant a reversal. (*People* v. *Newland, supra,* 15 Cal.2d 678; *People* v. *Weiss,* 123 Cal.App.2d 487 [266 P.2d 924].) It is well settled, too, that the requisite specific intent to defraud may be inferred from all the surrounding circumstances. (*People* v. *Weiss,* 123 Cal.App.2d 487 [266 P.2d 924].) It is quite evident from all the circumstances in the case at bar, including inconsistent statements and discrepancies in defendant's testimony, that the jury concluded defendant wrote the check and passed it to the payees knowing he did not have sufficient funds on deposit in the bank to cover the check without informing them of that fact and without requesting that the check be held for that reason. The jury also concluded that the defendant had no reasonable expectation of receiving any funds with which to cover the check. Certainly the evidence was sufficient to warrant the inference that appellant intended to defraud the payees. The attempted appeal from the verdict and sentence and decision of the court is dismissed and, for the foregoing reasons, the judgment is affirmed.

White, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 10, 1958.