[Crim. No. 6554.   Second Dist., Div. One.   July 29, 1959.]

THE PEOPLE, Respondent, v. LAYMOND LEE RUSH, Appellant.

Morris Schachter, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and John A. Vander Lans, Deputy Attorney General, for Respondent.

WHITE, P. J.—The district attorney of Los Angeles County filed an information wherein defendant was charged in three counts with violations of Penal Code, section 476a, issuing checks without sufficient funds, a felony. It was also charged that defendant suffered two prior felony convictions, one for forgery of a fictitious name and the other for issuing checks without sufficient funds. Defendant pleaded not guilty, and a jury trial was duly waived.

By stipulation the cause was submitted on the transcript of the preliminary hearing with each side reserving the right to offer additional evidence.

After reading the transcript of the preliminary hearing and hearing additional evidence the court adjudged defendant guilty as charged on all three counts of the information. He was sentenced to state prison. From the judgment and sentence defendant prosecutes this appeal. ■ No appeal lies from the sentence, hence the attempted appeal therefrom must be dismissed (*People* v. *Gallardo,* 41 Cal.2d 57, 67 [257 P.2d 29]).

As to the factual background surrounding this prosecution, the record reveals that on July 19, 1958, defendant presented a check for $35 to Helen Ferguson, a clerk at the Portola Pharmacy in Los Angeles. Miss Ferguson gave the defendant $7.00 in merchandise and $28 in cash in return for the check. The check (People's Exhibit 1) was drawn on the Sixth and Grand office of the California Bank and was made payable to Portola in the amount of $35 and bore the signature of Lee Rush as maker.

Also on July 19, 1958, a check for $38.53 (Count II) was presented to a salesgirl at Portola Pharmacy in exchange for $9.00 in merchandise and the rest in cash. This check (People's Exhibit 2), was drawn on the same bank and branch thereof and was made payable to Portola in the amount of $38.53 and bore the signature of Lee Rush as maker.

On July 20, 1958, the defendant presented a check for $38.49 (Count III) to Thelma Jeffrey, a clerk at Portola Pharmacy, for which he received $8.49 in merchandise and the rest in cash. This check (People's Exhibit 3), was drawn on the same bank and branch, was made payable to Portola in the amount of $38.49 and bore the signature of Lee Rush as maker.

All three checks (People's Exhibits 1, 2 and 3) were returned to the Portola Pharmacy by the Sixth and Grand branch of the California Bank without being honored.

Mr. J. J. Lovett, Assistant Vice President of the California Bank, searched the bank's books and records covering a period of the past 10 years and could find no account, either open or closed, in the name of Lee Rush, and testified there were no arrangements for credit between Lee Rush and his bank whereby checks drawn by Lee Rush would be paid by the bank without any money being deposited by him.

In a conversation with Police Officer L. A. Lechner, defendant stated that he had written and passed the three checks (People's Exhibits 1, 2 and 3) and that he had never had an account at the California Bank, Sixth and Grand. Defendant

told Officer Lechner that he ''intended'' to have his sister and brother-in-law at Crestline ''make up or make a deposit or send him some money; something to that effect.''

Sworn as a witness in his own behalf defendant admitted he issued the three checks in question, and in reply to a question as to whether he had an account at the drawee bank, stated, ''I had called them previously to hold some checks for me.'' He could not ''recall the name'' of the person at the bank with whom he had talked, stating that, ''He is an official that works at the desk in the front of the bank.'' Defendant testified that he had made arrangements to get the money from his brother-in-law and sister at Crestline, California on July 21. He further testified he had no intent to defraud either the Portola Pharmacy or the bank. On cross-examination defendant was interrogated as follows concerning the use to which the money was to be put, and the urgency for its use prior to receipt of financial help from his sister and her husband.

''Q. What did you do with all of this money on the 19th and 20th? A. It went for clothes and medicine and for the children.

''Q. Was there any urgency in getting all of this money before you got your $200.00 in the bank? A. At the time there seemed to be, I mean they were without decent clothes. I had been in the hospital for seven months and they had been very short of finances.''

Herman Deich, defendant's brother-in-law, testified that he and his wife had arranged to get a loan for defendant in the amount of $200 and that the latter was to arrive July 18th to get the money but he didn't arrive on that date.

Mrs. Lena Mae, defendant's sister, testified that she was present at the home of Herman and Mary Deich in Crestline, California, when the defendant was also present. There was discussion about helping defendant get ''straightened out'' and helping him with the children. They were going to help him with a loan and furnish a car for him so that he could go to work.

It was stipulated that the testimony of Mary Deich would be substantially the same as that of her husband.

Appellant's sole contention on appeal is that the evidence is insufficient to sustain a finding that when he concededly made and delivered the checks in question he had an intent to cheat or defraud the pharmacy or the bank upon which the checks were drawn. ▇ The essential elements for a conviction of the offense denounced by section 476a of the Penal

Code are, (1) an intent to defraud, (2) the . . . drawing . . ., (3) of a check . . ., (4) upon a bank . . ., (5) a lack of sufficient funds or credit with the drawee at the time the check . . . is made . . ., and (6) knowledge on the part of the accused of such lack of funds or credit. That the prosecution proved the last five of the foregoing elements is conceded.

The intent to defraud, which as appellant urges is the gist of the offense, must in most, if not in all cases, be proven by the circumstances surrounding the transaction in question (Pen. Code, § 21). While it may well be said that in the case now engaging our attention, the facts concerning the element of intent to defraud are in sharp conflict, we are persuaded that the record contains sufficient proof thereof to support the finding of the trial court. This we say because of the rule, many times reiterated by the reviewing courts of this state, and set forth in *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], as follows: "The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. (Citing cases.) "

Conceding the difficulty of establishing intent by direct evidence, and that the surrounding circumstances must be examined to determine the question of intent, appellant urges that any criminal intent is negatived by evidence showing that

prior to his visits to the Portola Pharmacy, he had been released from Atascadero Hospital where he was confined for a mental disturbance. That prior to writing the checks he had been at the home of his sister and brother-in-law in Crestline. At this time there was a discussion about helping appellant get straightened out and helping him with the children. Appellant's sister and brother-in-law were going to help him with a loan and furnish a car for him so that he could go to work. That appellant's brother-in-law and sister had arranged to get a $200 loan for him and he was to come to Crestline to get the money. That it was after this visit that appellant went to the Portola Pharmacy and received money and merchandise in exchange for the checks. The money was used for clothes and medicine for the children. There was an urgency at that time since appellant had been in the hospital about seven months and they had been very short of finances. It was because of this apparent urgent need of the children that appellant did not wait until he got the $200 into the bank. That Mr. Crayche, the owner of the Portola Pharmacy received a letter from appellant indicating that appellant intended to make a deposit of money before the check was cashed.

The evidence relied upon by the prosecution consisted of the testimony of J. J. Lovett, assistant vice president of the drawee bank that he had searched the books and records of said bank for a 10-year period prior to the date of the trial, and could find no record of an account in the name of appellant, either open or closed, nor any record of a credit arrangement whereby the bank would honor his checks without having any of his money on deposit to cover the same. ■ The burden resting upon the prosecution has been thus stated in *People* v. *Wilbur*, 33 Cal.App. 511, 514 [165 P. 729]:

". . . Hence, all that need be pleaded or proved to show or establish the fact of the commission of the offense denounced in said section is that, with intent to defraud, a party has made and drawn a check or draft upon some bank for the payment of money and delivered the same to another, knowing at the time such check was made, drawn, and delivered that he has not sufficient funds in, or credit with, such bank to meet such check or draft in full upon its presentation.''

■ And again, in *People* v. *Megladdery*, 40 Cal.App.2d 643, 652 [105 P.2d 385], the court said:

''The argument that the evidence was insufficient to support the verdict does not require extended treatment. The appellant admitted that he issued the several checks without suffi-

cient funds for their payment. His answer was that he had arranged credit through which he believed the checks would be paid. All the witnesses called denied this assertion and all the circumstances proved the falsity of the defense. On this appeal we must assume that the jury believed the witnesses called by the state. Under such a case it is useless to argue that the evidence was insufficient to support the verdict.''

Since we are required to assume in support of the finding of the court below the existence of every fact which the arbiter of the facts could have reasonably deduced from the evidence, and then determine whether or not the guilt of the accused is deducible therefrom, we are satisfied that the court could rightfully infer that by his conduct appellant represented that the checks were valid although he knew they were worthless, and drawn upon a bank in which he never had an account.

▮ Applicable to a determination of the question presented to us in the instant case is the language of the court in *People* v. *Whisenhunt,* 155 Cal.App.2d 534, 538 [318 P.2d 153], as follows:

''The earnest and vigorous argument of appellant is but an *argument as to the weight of conflicting evidence.* Appellant's argument is based upon his own testimony and, as has been so often stated, it is not the function of an appellate court to weigh conflicting evidence. That was the function of the jury and it is evident that the jury reached the conclusion that appellant wrote the checks in question and passed them to the payee knowing that he did not have sufficient funds on deposit in the bank to cover the checks, and without informing the payees of that fact and without requesting that the checks be held for a few days for that reason. The evidence was sufficient to warrant an inference that appellant intended to defraud the payees.

''As stated in *People* v. *Yrigoyen,* 45 Cal.2d 46, at page 49 [286 P.2d 1]:

'' 'The evidence is sufficient to show that there were not enough funds in the account when the check in question was issued or presented and that no credit arrangement was made for its payment. It can be inferred that defendant knew the depleted condition of the account, and, under the circumstances, the record supports the implied finding that he issued the check with intent to defraud Mendiboure. (Citing cases.) ' ''

Appellant relies heavily on the case of *People* v. *Griffith,* 120 Cal.App.2d 873, wherein it is stated at page 880 [262 P.2d

355], "One who negotiates a check with knowledge he has not sufficient funds in the bank to meet it—but who has good reason to believe, and honestly does believe, that it will be paid—cannot be said to have an intent to defraud the payee of the check." However, one has but to read the court's summation of the evidentiary features of the cited case as set forth on pages 880 and 881, which immediately distinguishes it from the factual background of the case at bar. ▇ In the instant case, appellant had never had an account with the bank upon which the checks were drawn, no part of the checks have been paid, and the trial judge, as he had a right to do, rejected appellant's testimony and that of his witnesses, that he had any expectation of loans or financial backing from an undisclosed "loan company," where the money "was there for him when he got there," and therefore, gave no credence to appellant's denial that he had an intent to defraud and found, we think reasonably, the requisite fraudulent intent (*People* v. *Croxton*, 162 Cal.App.2d 187, 193 [327 P.2d 611]; *People* v. *Whisenhunt, supra,* p. 537).

The unauthorized attempted appeal from the "sentence" is dismissed. The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.