[No. 20096. Department One. November 3, 1926.]

THE STATE OF WASHINGTON, *Respondent,* v. CURTIS
FRIEDLANDER, *Appellant.*[1]

[1] CRIMINAL LAW (45)—FORMER JEOPARDY—EFFECT OF PROCEEDINGS
BEFORE JEOPARDY ATTACHES. Rem. Comp. Stat., § 1928, provid-
ing that a justice of the peace, if he find the accused guilty
and is of the opinion that the punishment authorized is not
adequate to the offense, shall bind the accused over to the
superior court, is not unconstitutional as putting the accused
twice in jeopardy, in violation of Const. Art. 1, § 9.

[2] SAME (3-1)—INFANTS (2)—DELINQUENCY—STATUTORY PROVISIONS
—CREATION AND DEFINITION OF OFFENSES. Rem. Comp. Stat.,
§ 1987-17, making it a misdemeanor "to encourage, cause or
contribute to, the dependency or delinquency" of a minor, is
not unconstitutional because it fails to define the acts that will
produce the result denounced.

[3] WITNESSES (94)—PRIVILEGE OF ACCUSED IN CRIMINAL PROSECUTION
—IMPEACHMENT. Under Rem. Comp. Stat., § 2148, providing
that an accused, testifying in his own behalf, shall be subject
to all the rules of law relating to cross-examination, it is com-
petent to impeach an accused so testifying, by evidence that
his reputation for truth and veracity is bad.

Appeal from a judgment of the superior court for
Grays Harbor county, Campbell, J., entered January
6, 1926, upon a trial and conviction of contributing to
the delinquency of a female child. Affirmed.

[1]Reported in 250 Pac. 453.

*Philip Tworoger* and *O. M. Nelson,* for appellant.
*Austin M. Wade,* for respondent.

FULLERTON, J.—The appellant, Curtis Friedlander, was convicted in the superior court of Grays Harbor county by the verdict of a jury of the offense of encouraging, causing and contributing to, the delinquency of a female child of the age of sixteen years. The appeal is from the judgment pronounced upon the verdict.

The offense, as it is denounced by the statute [Rem. Comp. Stat., § 1987-17], is a misdemeanor and is an offense of which a justice's court and the superior court have concurrent jurisdiction. The offense, however, is punishable by a fine not exceeding one thousand dollars, or by imprisonment in the county jail for not more than one year, or by both such fine and imprisonment; penalties which a justice of the peace is not empowered to impose to their full extent.

Other statutes (Ib. §§ 1925-1928) [P. C. §§ 9434-9437], provide that any justice of the peace, on complaint on oath in writing charging any person with the commission of any crime of which he has jurisdiction, shall issue a warrant for the arrest of such person, cause such person to be brought before him and put upon his trial; that on such trial either the state or the defendant may demand a jury; and that such justice or jury, if they find the defendant guilty, shall assess his punishment;

". . . or if, in their opinion, the punishment they are authorized to assess is not adequate to the offense, they may so find, and in such a case the justice shall order such defendant to enter into a recognizance to appear in the superior court of the county, and shall . . . proceed as in proceedings by a committing magistrate." [Id. § 1928]

In this instance, the appellant was first arrested for the offense of which he was finally convicted on a complaint filed with the justice of the peace of Aberdeen precinct in Grays Harbor county. On being brought before that officer, he entered a plea of not guilty to the charge and demanded a change of venue to another justice of the peace. On the demand, the venue was changed to the justice of the peace of Cosmopolis precinct in the same county. In due course the appellant was put upon trial for the offense before the last named justice of the peace, neither party having demanded a jury. At the conclusion of the evidence, the justice announced that he found the appellant guilty, and further announced that, in his opinion, the punishment he was authorized to assess was not adequate to the offense, and thereupon bound the appellant over to answer in the superior court for the offense; proceeding as in the case of a committing magistrate. In the superior court an information was filed against the appellant, embodying the charge substantially in the language of the charge in the justice's court.

[1] One of the pleas interposed to the information in the superior court was the plea of former jeopardy. The plea was overruled by the trial court, and its action in so doing furnishes the basis for the first of the errors assigned for reversal in this court. It is contended that the appellant was in jeopardy for the offense with which he is charged, because of the trial entered upon in the justice's court, and that it is a violation of art. 1, § 9 of the state constitution, to again put him upon trial for the same offense in the superior court. Since the justice's court followed the provision of the statute in the course it pursued, it is at once apparent that to sustain the contention we must hold the statute to be in violation of the constitution. This

we are not inclined to do. The statute is dual in its nature. It permits a justice's court, in one and the same proceeding, to sit in the capacity of a trial court and as a committing magistrate, and to determine whether it will act in the one capacity or the other after the evidence against the accused is heard. If it concludes, after hearing the evidence, that the punishment it is empowered to impose is adequate to the offense, it may proceed as a court and inflict the punishment. If, on the other hand, it concludes after hearing the evidence that the punishment it is empowered to impose is inadequate to the offense, it may proceed as a committing magistrate.

Plainly, it was the view of the law-making body that jeopardy should attach, or should not attach, at the stage of the proceeding when it was necessary to make the determination; not at the time the examination was entered upon. We see no reason why this is not within the constitutional power of the legislature. It can undoubtedly vest in a justice's court the power to try certain classes of offenses and enter a judgment thereon which will have all of the effect of jeopardy. It can likewise vest in that court the power to inquire whether an offense has been committed, whether the accused has committed that offense, and authorize it to bind the accused over to answer in a court having jurisdiction to try and punish the offense without subjecting the accused to jeopardy. Since it may authorize the doing of these things in separate proceedings, we see no very substantial reason why it cannot combine the two, and we hold that it may do so.

The cases directly bearing upon the question seem not to be many. The only one precisely in point that has been called to our attention is *Stoner v. State*, 7 Ind. App. 620, 35 N. E. 133. The state of Indiana has

a constitution and a statute almost the exact counter-
part of our own, and the question determined arose
under circumstances like those here presented. It was
held that there was "not a putting in jeopardy within
the meaning" of the constitution by the proceedings in
the inferior court. To the same effect is *Common-
wealth v. Rice,* 216 Mass. 480, 104 N. E. 347. In our
own case of *State ex rel. Murphy v. Taylor,* 101 Wash.
148, 172 Pac. 217, it was said by way of argument that
a procedure of this sort was permissible under the
statutes, but as the constitutionality of the statute was
not raised or discussed, we possibly would not treat
the case as controlling were we now convinced that the
statute violated the constitution.

[2] The next contention is that the statute under
which the prosecution is had is in itself unconstitu-
tional. The statute makes it a misdemeanor for any
person to "encourage, cause, or contribute to, the de-
pendency or delinquency" of a minor child, but does
not specify or define the particular act or acts which
will constitute the offense. But, under the rule as we
have hereinbefore announced it, the objection is not
fatal. It is within the province of the legislature in
creating an offense to define it by a particular de-
scription of the acts constituting it, or to define it as
an act which produces a certain defined or described
result. *State v. Stuth,* 11 Wash. 423, 39 Pac. 665;
*State v. Brown,* 108 Wash. 205, 182 Pac. 944. The
statute in question complies with the latter of these
principles, and is not insufficient because it does not
define the acts which will produce the result denounced.
It is worthy of remembrance, moreover, that the
statute, substantially in its present form, has been
upon the statute books of the state since 1907 (Laws
1907, p. 16; Laws 1909, p. 595; Laws 1913, p. 531) and

has been sustained against repeated attacks made upon it. *State v. Plastino,* 67 Wash. 374, 121 Pac. 851; *State v. Williams,* 73 Wash. 678, 132 Pac. 415; *State v. Adams,* 95 Wash. 189, 163 Pac. 403; *State v. Lehman,* 125 Wash. 617, 217 Pac. 15. It may be that the precise objection now urged against it was not raised in any of the cases, but the fact that it was not so raised in some one or more of them is persuasive that it is not of controlling merit.

[3] At the trial, the appellant took the stand as a witness in his own behalf. Subsequently, the state was, over his objection, permitted to show by character witnesses that his reputation for truth and veracity was bad. The appellant assigns error on the ruling of the court, basing his objections on the ground that such a procedure is not permissible under the statute. The provision of the statute relied upon is § 2148 of Rem. Comp. Stat. [P. C. § 9214]. That statute, after providing that an accused person may offer himself as a witness on his own behalf and shall be allowed to testify as other witnesses before the court, further provides that when he

". . . shall so testify he . . . shall be subject to all the rules of law relating to cross-examination of other witnesses, . . ."

The appellant argues that the quoted provision of the statute limits the mode of attack upon him; that while, by becoming a witness, he subjects himself to cross-examination, and to that extent is to be treated as any other witness, it does not subject him to attack by showing that his reputation for truth and veracity is bad. But we have not given the statute this limited construction. In the early case of *State v. Duncan,* 7 Wash. 336, 35 Pac. 117, 38 Am. St. 888, we stated the rule to be that

"When a defendant in a criminal case takes the stand, he assumes the character of a witness, and as such is subject to be contradicted, disputed, or impeached, the same as any other witness."

The language there used has been repeated in substance in numerous succeeding cases, our latest expression, perhaps, being found in *State v. Crowder*, 132 Wash. 496, 231 Pac. 930, wherein we said:

"Appellant presented himself as a witness in the case, and in doing so he waived all of his constitutional privileges with reference to testifying and subjected himself to the rules applying to other witnesses in the case, . . ."

It is our opinion that we have not in these cases misinterpreted the statute, and since the general rule is that a defendant in a criminal cause who testifies on his own behalf may be impeached as to his reputation for truth and veracity (Bishop's New Criminal Procedure, Vol. II, § 1185), there was no error in the ruling of the court.

The judgment will stand affirmed.

TOLMAN, C. J., MAIN, MITCHELL, and HOLCOMB, JJ., concur.