463 P.2d 806

**STATE of Utah, Plaintiff and Respondent,**

v.

**A. G. TRITT, D.O., Defendant and Appellant.**

**No. 11523.**

Supreme Court of Utah.

Jan. 14, 1970.

Robert McRae, of Hatch, McRae & Richardson, Salt Lake City, for defendant-appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Asst. Atty. Gen., Salt Lake City, for plaintiff-respondent.

CROCKETT, Chief Justice.

The defendant was found guilty in the Juvenile Court of Salt Lake County of the offense of contributing to the delinquency of a minor in that he knowingly provided said minor with prescriptions allowing him access to an excessive quantity of depressant and stimulant drugs consisting of amphetamines and barbiturates; and aided and encouraged the juvenile to violate Sec. 58–17–14.13, U.C.A.1953 by using a false name in procuring said drugs.

The basis upon which the defendant seeks reversal of the conviction and dismissal of the charge, or, in the alternative, a new trial, is that the State did not affirmatively prove his criminal intent by showing that he knew the individual was a juvenile and/or that he was using a false name to procure the drugs. In support of his arguments that the State failed to prove the necessary criminal intent, the defendant relies on Sec. 76–1–20, U.C.A. 1953:

In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence.

The facts as shown by the record are that one Stephen C. Long, 17 years of age, went to the office of the defendant, who is an osteopathic physician. He told the defendant he was from San Francisco; that he had been in the service; had been working in San Francisco for some time; had been going to a doctor who had been "subscribing [sic] a drug to me," and that he wanted the same drug. After Mr. Long had written out his name as "Thomas T. Dugan" and his age as 23, the defendant wrote and gave him a prescription. Thereafter Mr. Long made frequent visits to the defendant's office and obtained prescriptions for these drugs which he had filled at various pharmacies. A Dr. James T. Weston testified that the quantities of drugs thus prescribed by the defendant for the juvenile were greatly in excess of any possible proper usage the latter could have made of them.

It is important to have in mind that the charge of which the defendant stands convicted is that of contributing to the delinquency of a minor in two ways: providing him with prescriptions for excessive quantities of the named harmful drugs;

and also by aiding and encouraging him to use a false name in connection therewith; and that the conviction should be sustained if the evidence supports the findings beyond a reasonable doubt that he contributed to the delinquency of the minor in either or both of the ways stated.

■ The difficulty with the defendant's position in urging the necessity of affirmatively showing a criminal intent, under 76–1–20 above quoted, is that he entirely ignores the final clause "or criminal negligence." This concededly imports something more serious than the negligence upon which liability is predicated in civil wrongs. It connotes some blameworthy conduct which shows careless disregard for adherence to legal duty and for the rights and safety of others.[1]

Except for the fact that he was a juvenile having turned 17 about four months previously, the record is not very revealing about the appearance of Stephen Long. In response to such a question the witness Keith Baxter replied:

"Tall, thin, fairly young fellow. Pimples on his face."

But it does appear that the defendant did not make any effort to determine whether Long was a juvenile, nor whether he was giving his true name and address in connection with requesting these numerous prescriptions. But he did know that the drugs were dangerous and that he was prescribing excessive quantities.

■ Upon our survey of the record in harmony with the traditional rule of review which requires us to consider all of the facts and circumstances shown by the evidence, and the inferences that could reasonable be derived therefrom, in the light favorable to the judgment of the trial court [2] there is a basis for finding beyond reasonable doubt that the defendant was guilty of contributing to the delinquency of a minor.

■■ It is deemed appropriate to make certain observations in regard to the dissent: First, the defendant did not raise the issue as to the validity of the statute, either in the court below or in this court; and therefore we can see no justification for dealing with that issue.[3] Second, and closely related to the above is that, in conformity with the principle of judicial re-

1. See State v. Lingman, 97 Utah 180, 91 P.2d 457 (1939). See also: State v. McMahan, 57 Idaho 240, 62 P.2d 156 (1937); Goodell v. People, 137 Colo. 507, 327 P.2d 279; Chandler v. State, 79 Okl. Cr. 323, 146 P.2d 598.
2. See State v. Knepper, 18 Utah 2d 215, 418 P.2d 780; People v. LaRocca, 68 Cal. App.2d 652, 157 P.2d 378.
3. See Hamilton v. Salt Lake County Sewerage Imp. Dist. No. 1, 15 Utah 2d 216, 390 P.2d 235, and authorities therein cited. It is appreciated that there are some exceptions, not material here. See 5 Am. Jur.2d at 311, and cases therein cited.

straint, the court should not invalidate a statute if the case can be decided on other grounds.[4]

■ The foregoing seem to present insuperable procedural obstacles to the attack on the statute in this case. However, we further observe that even if those obstacles did not exist, and we could properly consider the merits of the question, we could not agree that the statute is invalid. The foundational rules here are that all presumptions favor validity of the statute; and that it will not be declared unconstitutional unless found to be so beyond a reasonable doubt.[5] The terms "delinquency" and "contributing to the delinquency" as applied to minors has for many decades had such widespread usage as to give clear and understandable meaning[6] that it denotes actions that will aid, encourage or involve children in conduct which is contrary to law, or which is so contrary to the generally accepted standards of decency and morality that its result will be substantially harmful to the mental, moral or physical well-being of the child.[7] This connotation of those terms is sufficiently well known that persons of ordinary intelli-

gence and judgment who desire to do so would have no difficulty in governing their conduct by the statute.[8] This has particular application to the defendant's conduct and points up another reason why the reaching out and impairing the statute in question would be ill advised in this case.

■ Even if the defendant had complained about the vagueness of the statute, he is in no position to attack it on that ground. It is generally held that even if a statute may be unconstitutional as applied to certain individuals or situations it will not be stricken down at the behest of one who is not adversely affected by the defect.[9] Assuming that there may be conduct of some nature which would fall in doubtful areas as to whether it constitutes contributing to the delinquency of a minor, it is unnecessary for us to be here concerned with conduct in such twilight zones because the charge against the defendant is not of that character. The conduct here charged would amount to the commission of a crime, which by any definition whatsoever, constitutes contributing to the delinquency of a minor.

4. See Salt Lake City v. Perkins, 9 Utah 2d 317, 343 P.2d 1106; and see statement 5 Am.Jur.2d at 311.
5. Newcomb v. Ogden City, etc., 121 Utah 503, 243 P.2d 941.
6. See 43 C.J.S. Infants § 98 at p. 229; and 31 Am.Jur. 313.
7. See Commonwealth v. Stroik, 175 Pa. Super. 10, 102 A.2d 239, 241; Brockmueller v. State, 86 Ariz. 82, 340 P.2d

992; State v. Friedlander, 141 Wash. 1, 250 P. 453 (1926).
8. See State v. Packard, 122 Utah 369, 250 P.2d 561, and authorities therein cited.
9. See State v. Barlow, 107 Utah 292, 153 P.2d 647 (1944), and State ex rel. Johnson v. Alexander, 87 Utah 376, 49 P.2d 408 (1935).

For each of the foregoing reasons seprately, and most certainly for all of them together, the tearing down of the statute in question would be improper.

The conviction is affirmed.

MARCELLUS K. SNOW, District Judge, concurs.

ELLETT, Justice (concurring specially).

I concur, but limit it to the fact that the defendant prescribed an inordinate amount of depressant and stimulating drugs.

TUCKETT, Justice (dissenting).

I dissent.

The defendant was charged by the complaint with having contributed to the delinquency of one L., a minor under the age of 18 years, by providing said minor with prescriptions allowing him an excessive quantity of depressant and stimulant drugs consisting of amphetamines and barbiturates. The defendant was also charged in the complaint with aiding and encouraging the said juvenile to violate Section 58–17–14.13, U.C.A.1953, as amended, in that the said juvenile used a false name in procuring said drugs. It is claimed by the State that the defendant by these acts violated the provisions of Section 55–10–80 (1), U.C.A.1953, which reads in part as follows:

Offenses against children by adults—Jurisdiction of juvenile courts—Penalties.—The court shall have jurisdiction to try the following adults for offenses committed against children:

(1) Any person eighteen years of age or over who induces, aids, or encourages a child to violate any federal, state, or local law or municipal ordinance, or who tends to cause children to become or remain delinquent, or who aids, contributes to, or becomes responsible for the neglect or delinquency of any child;

\*     \*     \*     \*     \*     \*

shall be guilty of a misdemeanor \* \* \*.

It is clear that the legislature intended to denounce two types of conduct on the part of an adult, namely, inducing, aiding, or encouraging a child to violate any law, and also conduct which would tend to cause a child to become or remain delinquent. In respect to the first proposition it would seem that the legislature by using the words, "induces, aids, or encourages," intended that these acts be knowingly or intentionally done. As to the second part of the statute which prohibits conduct by an adult which tends to cause a child to become or remain delinquent, it is of course vague unless the meaning of the term, "delinquent," is supplied from other sources.

Prior to 1965, Section 55–10–6, U.C.A. 1953, contained the following definition:

The words "delinquent child" include:

A child who has violated any state law or any ordinance or regulation of a subdivision of the state.

A child who by reason of being wayward or habitually disobedient is uncontrolled by his parent, guardian or custodian.

A child who is habitually truant from school or home.

A child who so deports himself as to injure or endanger the morals or health of himself or others.

In 1965, the legislature undertook to revise the statutes pertaining to juveniles and juvenile courts. The section above referred to defining the term "delinquent child," was repealed and the legislature failed, perhaps by inadvertence, to incorporate in the new act a definition of "delinquency" or "delinquent child." The offense of contributing to the delinquency of a minor was unknown to the common law and exists now only by reason of statutory provisions dealing with the subject.[1]

Without a statutory definition of the terms, "delinquency," or "delinquent," Section 55–10–80, U.C.A.1953, as amended, is subject to challenge on constitutional grounds for vagueness and because of that defect, fails to define a criminal offense,[2] with the exception of that part of the statute which makes inducing, aiding or encouraging a child to violate a law an offense under the section above referred to. Our attention has not been directed to any decision of this court which defines the terms, "delinquent," "delinquency" or "delinquent child," without the aid of a statute, nor do we find other statutory definitions with the exception of Section 76–42–5, U.C.A.1953, as amended, which deals with the purchase and possession of tobacco by minors.

There is a strong public policy in favor of protecting children from acts which might encourage them to violate laws or engage in immoral conduct, nevertheless, there is also a public policy which requires that a penal statute be definite and certain to the end that one who would be law-abiding can find guidance from the language used. We are not asked to invalidate a statute but we are dealing with a void which resulted from the action of the legislature in deleting its prior definition of "delinquency" from the statutes.

In view of the treatment of the problems raised on this appeal it is apparent to me

1. 43 C.J.S. Infants § 13, p. 69, and Infants § 98, p. 229.
2. State v. Musser, 118 Utah 537, 223 P.2d 193; State v. Hodges, (Or.) 457 P.2d 491; Commonwealth of Pa. v. Randall, 183 Pa.Super. 603, 133 A.2d 276;

Brockmueller v. Ariz., 86 Ariz. 82, 340 P.2d 992; Anderson v. State, (Alaska) 384 P.2d 669; State v. Roessler, 58 N.M. 102, 266 P.2d 351; State v. Barone, (Fla.) 124 So.2d 490; State v. Palmer, 232 Or. 300, 375 P.2d 243.

that the section of the statute under which the complaint was laid fails to state an offense insofar as the defendant is charged with contributing to the delinquency of a minor. It is likely that the statute is valid insofar as it relates to an adult inducing a juvenile in violating a law or aids and encourages such violation. However, as mentioned above, I am of the opinion that the legislature in its use of the language above referred to intended to punish only those who knowingly induce, aid, or encourage the commission of an offense.[3] In this case, while it is uncontradicted that the minor used a false name and address in procuring the prescriptions from the defendant and in procuring the drugs authorized by the prescriptions, which acts are in violation of Section 58–33–1(d), U.C.A.1953, as amended, nevertheless the record is devoid of evidence which would tend to show that the defendant knew that the minor was using a false name or address in obtaining the prescriptions. The State urges that an act in violation of the statute is malum prohibitum and therefore knowledge or intent need not be shown. I do not believe the legislature intended that result. Such a holding would require physicians and other practitioners of the healing arts to act at their peril in treating a patient by prescribing controlled drugs without first ascertaining the patient's true name and address.

I would reverse.

CALLISTER, J., concurs in the dissenting opinion.

HENRIOD, J., does not participate herein.

---

3. State v. Cutshaw, 7 Ariz.App. 210, 437 P.2d 962, 973.