485 P.2d 1035

Maurice GRANT, Plaintiff,

v.

UTAH STATE LAND BOARD, Defendant.

No. 12286.

Supreme Court of Utah.

June 2, 1971.

Clyde, Mecham & Pratt, Frank J. Allen, Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., Sheridan L. McGarry, Asst. Atty. Gen., Salt Lake City, for defendant.

CROCKETT, Justice:

In this proceeding the plaintiff Maurice Grant seeks to reverse the action of Utah State Land Board in denying his application for reinstatement of certain contracts of purchase of State land.

The essential facts are not in dispute: The plaintiff had acquired personally, and by approved assignments, certain contracts of purchase of State lands, which were payable in installments. The payments were delinquent in January, 1966, and after proper notice remained delinquent in excess of 90 days, and were forfeited in accordance with the provision of Sec. 65–1–47, U.C.A.1953.[1] Nearly three years later, on April 16, 1969, plaintiff presented his application for reinstatement of the contracts, together with one year's inter-

est, as required by the section referred to. There had been no sale or lease of the lands meanwhile.

The issue in this case is brought into sharp focus by the plaintiff's statement that the following portion of said Sec. 65–1–47 vests in him "the absolute right to reinstate a forfeited certificate at any time before lands described in the certificate are made subject of another sales or lease agreement":

* * * Any person whose contract of sale has been forfeited *may* upon application *have his contract reinstated* at any time before the land has again been sold or leased by paying one year's interest, *and if said land has been leased, the board may reinstate said contract* at the termination of said lease, or within thirty days thereafter, upon the payment of one year's interest as aforesaid.

The Land Board contends to the contrary: that the statute is permissive; and that the plaintiff's contract having been forfeited, he may have it reinstated only at the discretion of the Board.

It is to be conceded that the problem involves some perplexity. This is particu-

---

1. Sec. 65–1–47, U.C.A.1953. Default in payments — Forfeiture — Extensions — Reinstatement.—Any purchaser * * * who is in default for nonpayment of principal, or interest, due the state for a period of one month, shall be notified by the board by letter of such default, said letter shall have printed thereon * * * a copy of this section; and if, within ninety days * * * has not paid his delinquencies, and has procured no extension of time, * * * his contract of sale may be forfeited * * *; upon application the board may extend the time for making interest payments not to exceed one year, and may extend the time for making principal payments not to exceed five extensions for one year each * * *.

larly so because upon a first-blush impression from reading the above-quoted portion of the statute by itself, the meaning might seem to depend upon where the emphasis is laid. Plaintiff argues that the language of the first emphasized clause, which deals with land which *has not* been leased, in stating that a purchaser " * * * *may* upon application *have his contract reinstated*" clearly mandates that the contracts must be reinstated. He contrasts this with the subsequent emphasized clause, which deals with land which *has* been leased, with respect to which it states that " * * * the board *may* reinstate said contract at the termination of the lease * * *." He urges that there is sufficient contrast between the two provisions to indicate that the former is mandatory and the latter is discretionary.

We are constrained to agree that this argument projected by plaintiff is not entirely without plausibility. Assuming then, for the purpose of our analysis of this statute, that there are different interpretations that reasonably may be given its language, there are certain principles relating to statutory construction which may be resorted to for assistance in arriving at a proper solution to this problem.

Foundational rules require that we assume that each term of a statute was used advisedly;[2] and that each should be given an interpretation and application in accord with their usually accepted meaning,[3] unless the context otherwise requires. In this connection it must be realized that, although there are exceptions where the context does fairly require otherwise, the word "may" in its most usual meaning does not import certainty, but uncertainty.[4] That is, that whatever is referred to, either *may* or *may not* be, or occur. This line of reasoning proceeds: that if the legislature had intended an applicant to have an absolute right of reinstatement, instead of saying that an applicant *"may* have his contract reinstated," it could easily have used the word "shall" or "must," and thus have rendered a mandatory meaning clear.

The reasonable deduction here is that the use of the term "may" in this statute in its ordinary meaning indicates that one "may" or "may not" have his contract reinstated upon a condition to be fulfilled, or a choice to be made. The plaintiff having made his choice by filing the application, the only remaining choice would be that of the Land Board. This reasoning then concludes:

2. See State v. Gates, 118 Utah 182, 221 P.2d 878.

3. See Miles v. Wells, 22 Utah 55, 61 P. 534, 536.

4. See e. g. Bradley v. Cleaver, 150 Kan. 699, 95 P.2d 295.

that the interpretation which gives the Land Board discretion as to whether the applicant *"may * * * have his con-tract reinstated"* harmonizes with the rule of statutory construction stated above in assuming that the term was used advised-ly and in consonance with its most commonly accepted meaning.

■ The other important term concern-ing which the plaintiff's urged interpreta-tion raises a question is "forfeit." The statute provides that after notice is given to a defaulting purchaser, his contract may be forfeited, which it is conceded was done here. The term "forfeited" in its usually accepted meaning as applied to rights to property is that they are taken away, or lost.[5] Thus it would seem that the idea advocated by plaintiff that he retains an absolute right to reinstate his contract is quite inconsistent with the true meaning and effect which should be given the words "forfeit" and "forfeiture" as used in the statute. Again, if the legislature had in-tended something so unlike a forfeiture as he contends, it should not have used that term. But it should have stated that the contract should be under suspension, re-main in abeyance, or some other like term, until it was reactivated or reinstated by the specified procedure.

■ Supplementing what has been said about specific terms of the statute, there is also this principle to be considered: that where there is ambiguity or uncertainty in a portion of a statute, it is proper to look to the entire act in order to discern its meaning and intent; and if it is reasona-bly susceptible of different interpretations, the one should be chosen which best har-monizes with its general purpose.[6]

■ The general purpose of the law in giving the Land Board responsibility for administering the public lands is to en-courage their settlement and development so that they and their resources can be wisely used, managed and conserved.[7] It requires but little reflection to see that if any such contract becomes a permanent en-cumbrance upon the land, in that it may be revived at any time, no matter how many years have elapsed, upon the unilateral ac-tion of the purchaser, by simply paying one year's interest on the contract balance, the Board could very well be severely ham-pered in fulfilling its responsibility. A per-son could enter into such a contract for State lands at minimal price and payments, fail to perform, suffer forfeiture, and thereby in effect have acquired a permanent option to buy the State lands at the origi-nal contract price. He could sit by and,

5. See Board of County Commissioners v. Litton, 315 P.2d 239, 64 A.L.R.2d 1365 (Okl.).

6. See Rowley v. Public Service Comm., et al., 112 Utah 116, 185 P.2d 514; 82 C.J.S. Statutes § 323, n. 84.

7. See Sec. 65-1-14, et seq., U.C.A.1953.

without further expense to himself, await developments. In case of enhancement of value for any reason, he could file an application for reinstatement, pay one year's interest, and demand performance of the contract.[8] The possible inequities and impracticability of such a situation are obvious.

Our conclusion that no such incongruous result was intended is corroborated by the portion of said Sec. 65–1–47 which provides that:

> * * * the board may extend the time for making interest payments not to exceed one year, *and may extend the time* for making principal payments *not to exceed five extensions for one year each.*

In this provision two things are clearly shown: (1) an intent that there should be some finality to such contracts when they are not being performed; and (2) that the Board should have some discretion concerning how long they should be kept alive.

On the basis of various considerations bearing on the interpretation and application of Sec. 65–1–47 as discussed herein, it is our conclusion that the Land Board should and does have discretion as to whether a contract which has once been forfeited should be reinstated. Its action would of course be subject to review in appropriate court proceedings for any arbitrary action or abuse of discretion as would the action of any other administrative agency,[9] a matter which has not been raised here. (All emphasis added).

Affirmed. No costs awarded.

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

8. The possibility of doing this is aided by Sec. 65–1–29, U.C.A.1953, which requires the Land Board in selling State lands to " * * * give notice of such sale by publication once a week for four successive weeks * * *."

9. As to the authority to review actions of the Land Board, see discussion in McKnight v. State Land Board, 14 Utah 2d 238, 381 P.2d 726; and see also Archer v. Utah State Land Board, 15 Utah 2d 321, 392 P.2d 622; Sec. 4, Art. VIII, Utah Constitution; Rules 65B and 81(d), U.R.C.P.