1999 UT App.054

**STATE of Utah, Plaintiff and Appellee,**

v.

**Joseph K. KRUEGER and Mary Ann Sawyers, Defendants and Appellants.**

**No. 981035–CA.**

Court of Appeals of Utah.

Feb. 25, 1999.

by showing inappropriate bias toward her, an unmarried adoption petitioner.

Gregory G. Skordas, Elizabeth T. Dunning, David B. Watkiss, and Brett J. Delporto, Salt Lake City, for Appellants.

Gene E. Strate, John E. Schindler, and George M. Harmond, Jr., Price, for Appellee.

Jeffrey Hunt, Brett J. Swanson, Salt Lake City, for Amicus Curiae Utah Chapter of the Society of Professional Journalists.

Before WILKINS, P.J., and DAVIS and BILLINGS, JJ.

## OPINION

WILKINS, Presiding Judge:

¶ 1 Defendants have been charged with contributing to the delinquency of minors in violation of Utah Code Ann. § 78–3a–801(1)(a)(ii) (1996). The trial court denied their motions to dismiss these criminal charges and they each successfully sought permission to bring an interlocutory appeal

in this court prior to trial. We have consolidated their appeals because the facts and issues presented are nearly identical. For purposes of this appeal, defendants admit that the factual bases of the charges are correct, reserving the right to contest certain factual allegations in the event of trial.

## HOLDING

¶ 2 For reasons that we will detail in this opinion, we hold that (1) the statute in fact prohibits the conduct stipulated to; (2) the trier of fact may find the necessary intent present from the facts as alleged; (3) the language of the statute is not so vague as to render it void under the due process clause; and (4) neither the First Amendment to the United States Constitution nor the free press protections of Article 1 Section 15 of the Utah Constitution acts to bar prosecution in this case.

## BACKGROUND

¶ 3 KTVX television in Salt Lake City employs Mary Ann Sawyers as a reporter and Joseph Krueger as a cameraman for its news operation. On February 18, 1997, they were invited to Carbon High School in Price, Utah to observe and report on a school assembly designed to discourage students from using chewing tobacco.

¶ 4 Before the assembly, the defendants contacted a school employee and asked her to find students who presently chewed tobacco and who were willing to be interviewed after the assembly. The school employee identified two such students.

¶ 5 After the assembly, defendants and the two students left the school building and walked into the school's parking lot where they met other students who also said they used chewing tobacco and wanted to be interviewed. From this point on, the facts are in dispute. In their statements to the police, several students claimed that the defendants asked them to chew tobacco during the interview and that the defendants stated that the

students would not be punished for doing so. However, the defendants maintain that they did not "ask" or "instruct" the students to chew tobacco, but rather they told the students "to do what they ordinarily would do." In their statements, none of the students claimed that defendants provided chewing tobacco or asked a non-user to chew. However, one student reported that Krueger chewed tobacco with the students.

¶ 6 For purposes of both of their motions to dismiss in the trial court and also of this appeal, the defendants concede that some of the students involved would testify that Sawyers and Krueger asked them to chew tobacco "for the camera" so that video images of the students chewing tobacco could be used as part of the news story.

¶ 7 The defendants were each charged with five counts of contributing to the delinquency of a minor in violation of Utah Code Ann. § 78–3a–801(1)(a) (1996). Both defendants filed a motion to dismiss the charges. The trial court agreed that the defendants could not be prosecuted under subsection (i) of the statute.[1] However, the trial court ruled that defendants could be prosecuted under subsection (ii) of the statute which prohibits an adult from doing any act which "tends to cause minors to become or remain delinquent," and also concluded that subsection (ii) of the statute was not unconstitutionally vague, even given the possible implications of the constitutional protections applicable to the press. Utah Code Ann. § 78–3a–801(1)(a)(ii) (1996).

¶ 8 On appeal, defendants contend that dismissal is proper because (1) the stipulated conduct is not prohibited by the language of the statute; (2) they did not possess the necessary intent required for conviction under the statute; (3) the statute itself is so vague as to be constitutionally defective under the due process clause of the Fourteenth Amendment to the United States Constitution; and (4) their special role as press representatives, engaged in the coverage of a

---

1. Section 78–3a–801(1)(a)(i) makes it a crime to solicit, request, command, encourage, or intentionally aid or "act[ ] with a minor in the violation of any federal, state or local law or municipal ordinance." The trial court ruled that the

defendants could not be charged under this subsection because the offense the students were charged with was possession of tobacco, and the State did not contend that defendants provided the tobacco.

legitimate news story, prevents prosecution in this instance.

## ANALYSIS

### A. Prohibitions of § 78–3a–801(1)(a)(ii)

¶ 9 Defendants first maintain that the trial court erred in denying their motions to dismiss because their alleged actions do not come within the prohibitions of subsection (ii) of Utah Code Ann. § 78–3a–801(1)(a) (1996),[2] even when accepting the State's allegation of facts.

■■■ ¶ 10 A trial court's ruling on a motion to dismiss is a question of law which we review for correctness giving no particular deference to the trial court's legal conclusions. *See State v. Taylor,* 884 P.2d 1293, 1296 (Utah Ct.App.1994). Moreover, the interpretation of a statute presents an issue of statutory construction which we review for correctness. *See Berube v. Fashion Centre, Ltd.,* 771 P.2d 1033, 1038 (Utah 1989).

¶ 11 Although the State contends that Sawyers and Krueger suggested that the students chew tobacco already in the students' possession, it does not suggest that the reporters provided the tobacco or encouraged students not already in possession of tobacco to also chew. The record reveals that the reporters simply asked students who were under the age at which it is legal to possess tobacco, and who already had chewing tobacco in their individual possession, to chew the tobacco so that the reporters could videotape the students chewing for inclusion in the news account of the anti-chewing assembly.

■■■ ¶ 12 Subsection (ii) of § 78–3a–801(1)(a) purports to make it a crime for any person 18 years of age or older to take any action that "tends to cause minors to become or remain delinquent," and does not require proof that the minor did in fact become delinquent or committed a delinquent act.[3] Defendants argue that, as a matter of law, the alleged facts in this case cannot lead to the conclusion by the fact-finder that defendants violated this statute. Specifically, defendants contend that they cannot be prosecuted under subsection (ii) because the "delinquency" alleged is the students' *possession* of chewing tobacco in violation of section 76–10–105,[4] and because defendants had nothing to do with the students coming into possession of the chewing tobacco, they cannot possibly be held accountable for tending to cause minors to become or remain delinquent. Defendants bolster this argument by noting that the minors were charged with possession of tobacco under section 76–10–105, and that once possessed, the *use* of tobacco is not a legally prohibited act for the minors. Defendants therefore argue that because use of the tobacco by the students was not, in itself, a delinquent act for which the minors could be charged, it must follow that encouraging that use cannot be conduct that tends to cause minors to become or remain delinquent.

■■■ ¶ 13 For defendants to prevail in this analysis, we would be required to accept the premise that delinquency, for the purposes of the contributing statute, only includes acts by minors for which they may be *charged* with delinquency under a criminal or juvenile statute.[5] It also requires us to conclude that encouraging the use of tobacco

2. Section 78–3a–801(1)(a)(ii) makes it a crime for any person 18 years or older to take any action which "tends to cause minors to become or remain delinquent."

3. Section 78–3a–801(2) provides: "It is not necessary in order to obtain a conviction under this statute to establish that the minor had become a delinquent or committed a delinquent act."

4. Section 76–10–105 provides:
(1) Any person under the age of 19 years who buys, accepts, or has in his [or her] possession any cigar, cigarette, or tobacco in any form is

guilty of a class C misdemeanor, or may be subject to the jurisdiction of the juvenile court. (2) A compliance officer appointed by a board of education under Section 53A–3–402 may issue citations for violations of this section committed on school property. Cited violations shall be reported to the appropriate juvenile court.

5. While it is clearly within the authority of the Legislature to limit the adult offense of contributing to the delinquency of a minor to this narrower circumstance, no such restriction has yet been adopted.

already possessed by a minor cannot, as a matter of law, constitute causing a minor to *remain* delinquent. We reject these notions. In doing so, we hold that the definition of "delinquent," as used in section 78–3a–801(1)(a)(ii), is not limited to only those acts by a child for which the child can be hailed into court. Given the additional language of section 78–3a–801(2), that an adult may be found guilty of contributing to the delinquency of a minor without establishing that the minor became a delinquent or committed a delinquent act, it is apparent that the Legislature intended to include a broader category of acts by adults. Moreover, the language of section 78–3a–801(1)(a)(i) clearly provides for the prosecution of a person 18 or older who solicits, requests, commands, encourages, or intentionally aids, or acts with a minor to violate a specific state, federal, or local law.[6] It is under this subsection of the statute that prosecution would properly lie for encouraging a child to *possess* tobacco in direct violation of state law. To accept the defendants' argument—that prosecution under subsection (ii) is also limited to the same acts by the adult charged—would make subsection (ii) mere surplusage, and such an interpretation is inconsistent with our long standing practice of reading statutory language so as to give meaning to each provision. *See West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982); *Grant v. Utah State Land Bd.*, 26 Utah 2d 100, 485 P.2d 1035, 1036 (1971).

¶ 14 The clear import of the language in subsection (ii) of section 78–3a–801(1)(a) comports with the analysis of the Utah Supreme Court in *State v. Tritt*, 23 Utah 2d 365, 463 P.2d 806 (1970). In that case an adult was convicted of contributing to the delinquency of a minor. The court noted that a recent change in the statute then applicable to the defendant had eliminated the statutory definition of "delinquency" and

"contributing to the delinquency" of a minor, but that those words

> had such widespread usage as to give clear and understandable meaning that it denotes actions that will aid, encourage or involve children in conduct which is contrary to law, or which is so contrary to the generally accepted standards of decency and morality that its result will be substantially harmful to the mental, moral or physical well-being of the child. This connotation of those terms is sufficiently well known that persons of ordinary intelligence and judgment who desire to do so would have no difficulty in governing their conduct by the statute.

*Id.* at 808–09.

¶ 15 We adopt the definition of delinquency described by the court in *Tritt*.[7] Under the facts of this case, persons of ordinary intelligence and judgment would have no difficulty in knowing that encouraging children to chew tobacco amounts to encouraging conduct by the child that is delinquent under the law, despite the fact that *use* of tobacco by a minor is not identified as a separate delinquent act under the statute prohibiting *possession* of tobacco by a minor.

¶ 16 Ironically, defendants acknowledge that they were on the school grounds to cover a story about the harmful effects of chewing tobacco on children. In fact, the assembly they had traveled to the school to cover focused directly on evidence of that harm. Defendants knew, or may be presumed to have known, that use of tobacco by children is substantially harmful to the childrens' physical well-being. Under the definition of delinquency enunciated in *Tritt*, the alleged conduct of defendants could be construed as violating the prohibitions on contributing to the delinquency of minors described in section 78–3a–801(1)(a)(ii). Accordingly, the trial court correctly concluded

---

**6.** Section 78–3a–801(1)(a)(i) makes it a crime for any person 18 years of age or older to "solicit[ ], request[ ], command[ ], encourage[ ], or intentionally aid[ ] or [to] act[ ] with a minor in the violation of any federal, state, or local law or municipal ordinance."

**7.** We note, as does Judge Davis in his thoughtful dissent, that this definition of delinquency in *Tritt*

is not holding, that the decision itself is a plurality opinion, and that as such we are not bound to follow it. However, we find the definition accurate, and useful, and adopt it as part of our holding. Consequently, until a superior court holds otherwise, the definition of delinquency described in *Tritt*, and adopted here, now becomes binding authority.

that a fact-finder could determine that defendants' acts fall within the statutory definition of subsection (ii)—tending to cause "minors to become or remain delinquent."

¶ 17 In addition, the parties dispute whether the defendants instructed the students to chew tobacco on camera or simply told the students to do what they would ordinarily do. Based on this dispute, a fact-finder could certainly find that the defendants *encouraged* the children to chew tobacco—thus causing the students to "remain delinquent," in violation of the statute forbidding possession of tobacco by a minor. Alternatively, a fact-finder could determine that the defendants *prolonged* the time in which the students were committing the violation, again causing the minors to "remain delinquent" in violation of section 78–3a–801(1)(a)(ii). Therefore, because the provisions of section 78–3a–801(1)(a)(ii) allow for the imposition of criminal liability on defendants under the facts alleged by the State, the trial court correctly denied defendants' motions to dismiss these charges.

### B. Necessary Intent

▉ ¶ 18 Defendants also argue that they did not violate section 78–3a–801(1)(a)(ii) because they lacked the requisite mental state to commit the offense. They argue that their only intention was to cover a legitimate news story, and that they did not intend to encourage the students to become or remain delinquent. Defendants mistake the intent required. All the State needs to prove in this instance is that *the defendants intended for the children to chew the tobacco.* The subjective motivation of the defendants in wanting the children to chew the tobacco[8] is irrelevant in this case. Therefore, it would be sufficient for the fact-finder to determine that defendants intended for one or more of the children to prolong the possession of the tobacco, or to otherwise become or remain delinquent, as those words are commonly defined, as recognized in *Tritt* and again by us here.

▉ ¶ 19 Moreover, whether defendants acted with the required mental state pres-

8. Ironically, the defendants' expressed intent was to use the video images in a news story on the

ents a question of fact which must be submitted to the fact-finder. *See State v. Workman,* 852 P.2d 981, 987 (Utah 1993). Therefore, dismissal on this basis would also be improper.

### C. Vagueness

▉ ¶ 20 Defendants further contend that dismissal is proper because section 78–3a–801(1)(a)(ii) is unconstitutionally vague because it fails to give adequate notice of the prohibited conduct.

▉ ¶ 21 When reviewing the constitutionality of a statute, we must presume that the statute is constitutional. *See Tritt,* 463 P.2d at 808. A statute "will not be declared unconstitutional unless found to be so beyond a reasonable doubt." *Id.; see also Salt Lake City v. Lopez,* 935 P.2d 1259, 1265 (Utah Ct.App.1997); *State v. McKinley,* 53 N.M. 106, 202 P.2d 964, 966 (1949) (holding court has duty to sustain and uphold statutes rather than to ignore and defeat them). Those challenging the constitutionality of a statute bear the burden of demonstrating its unconstitutionality. *See Greenwood v. City of North Salt Lake,* 817 P.2d 816, 819 (Utah 1991). We review such a constitutional challenge for correctness. *See Lopez,* 935 P.2d at 1262 (providing challenge to constitutionality of statute is question of law which we review for correctness).

¶ 22 The United States Supreme Court has stated:

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.... [W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.... [L]aws must [also] provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to police [officers], judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*dangers and harms* of children using chewing tobacco.

*Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

¶ 23 Similarly, the Utah Supreme Court has held that a statute is not unconstitutionally vague if it is sufficiently explicit to inform the ordinary reader what conduct is prohibited and does so in a manner that does not encourage arbitrary and discriminatory enforcement. *See Greenwood,* 817 P.2d at 819; *State v. Theobald,* 645 P.2d 50, 51 (Utah 1982) (per curiam).

¶ 24 Section 78–3a–801(1)(a)(ii) (1996) provides that it is unlawful for any person 18 years or older to "tend[ ] to cause minors to become or remain delinquent." Such language provides adequate notice to the ordinary reader of the prohibited conduct despite the fact that the term "delinquent" is not specifically defined in the disputed statute.

¶ 25 This case does not, as defendants would have us believe, present a situation where Utah law fails to adequately define an essential statutory term such that the ambiguity created would, in effect, violate the specificity requirement of due process. *See State v. Swenson,* 838 P.2d 1136, 1137 (Utah 1992); *Lopez,* 935 P.2d at 1264. Rather, the term "delinquent," as applied to minors, is well-defined in this state.

¶ 26 Having adopted the language and analysis of *Tritt* with respect to what constitutes delinquency, and contributing to the delinquency of a child, we hold that the statute in question is not unconstitutionally vague.

> The terms "delinquency" and "contributing to the delinquency" ... have ... such widespread usage as to give clear and understandable meaning that they denote actions that will aid, encourage or involve children in conduct which is contrary to law, or which is so contrary to the generally accepted standards of decency and morality that its result will be substantially harmful to the mental, moral or physical well-being of the child.

*Tritt,* 463 P.2d at 808–09.

¶ 27 In upholding this statute, we comport with other states, which have upheld nearly identical statutes against similar con-

stitutional attack. *See Loveland v. State,* 53 Ariz. 131, 86 P.2d 942, 945 (1939); *State v. McKinley,* 53 N.M. 106, 202 P.2d 964, 966 (1949) (citing cases); *State v. Friedlander,* 141 Wash. 1, 250 P. 453, 455 (1926); *State v. Harris,* 105 W.Va. 165, 141 S.E. 637, 638–39 (1928). Directly on point, the court in *McKinley* upheld a statute making it an offense to "tend[ ] to cause or encourage the delinquency of [a minor]." *McKinley,* 202 P.2d at 965. Regarding this statute, the *McKinley* court held that the Legislature's failure to define what acts constitute the offense is not fatal. *See id.* at 964–66; *accord Friedlander,* 250 P. at 454 (stating similar proposition when statute made it an offense to "encourage, cause, or contribute to dependency or delinquency of a minor"). "It is within the province of the Legislature in creating an offense to define it by a particular description of the acts constituting it, *or* to define it as an act which produces a certain defined or described result." *McKinley,* 202 P.2d at 966 (emphasis added); *Friedlander,* 250 P. at 454 (same). The statute in question complies with the latter of these principles. For this reason and because the term "delinquent" is a well-known term, sufficiently defined by Utah case law, we hold that Utah Code Ann. § 78–3a–801(1)(a)(ii) is not void for vagueness.

**D. Free Speech and Press Guarantees**

¶ 28 Finally, defendants contend that prosecuting journalists engaged in news gathering activities under the circumstances of this case is unconstitutional under the First Amendment and Article 1 Section 15 of the Utah Constitution. This presents a question of law which we review for correctness. *See State v. Arbon,* 909 P.2d 1270, 1271–72 (Utah Ct.App.1996) (reviewing district court's decision on constitutional question for correctness).

¶ 29 The essence of defendants' argument regarding the First Amendment to the United States Constitution, and its guarantees of a free press, as well as that of Article 1 Section 15 of the Utah Constitution, is this: Even if the alleged conduct by the defendants falls within that proscribed by section 78–3a–801(1)(a)(ii), and even if the alleged

conduct may be found by a jury to include the necessary intent for a criminal violation, and even if the statute itself is constitutionally sound when reviewed for alleged vagueness in not specifically defining "delinquent" and "contributing to the delinquency" of a minor, then application of the free press protections of the federal and state constitutions prohibits prosecution of these defendants.

¶ 30 We hold that the alleged conduct of the defendants does fall within that proscribed by section 78–3a–801(1)(a)(ii), that it may be found by a jury to include the necessary intent, and that the statute is not void for vagueness. As such, we reach the defendants' final constitutional challenge.[9]

¶ 31 Defendants and *Amicus* direct our attention to a number of decisions that apply First Amendment principles to prevent the criminal prosecution of representatives of the press arising from reporting illegal conduct.[10] However, in none of these cases were the defendant-reporters alleged to have asked the subjects of their reports to violate the law. Moreover, in none of these cases were the defendant-reporters alleged to have done anything other than merely record and report on the illegal conduct. If the facts alleged by the State were that the defendants had simply videotaped the children possessing or chewing tobacco, with nothing more, prosecution of the defendants would clearly be prohibited by the First Amendment and by Article 1 Section 15 of the Utah Constitution. *See Branzburg v. Hayes,* 408 U.S. 665, 681–83, 92 S.Ct. 2646, 2656–57, 33 L.Ed.2d 626 (1972) (recognizing First Amendment protection for news gathering). However, while the First Amendment protects news gathering activities, it does not, in the interest of securing news, give the press license to violate criminal laws. *See id.* at 682, 691, 92 S.Ct. at 2657, 2662 (providing media "has no special immunity from the application of general laws" although violating law could provide newsworthy information); 16A Am.Jur.2d *Constitutional Law* § 504 (1997).

¶ 32 Krueger and Sawyers are not being prosecuted for simply *reporting on* the activities of the children or for *recording* video images of the children. These are clearly protected activities under the First Amendment. Rather, Krueger and Sawyers are being prosecuted for allegedly *setting up* the "visual images to illustrate the story" that they claim is "essential to television journalism."[11] From the facts presented for our review, it appears that Krueger and Sawyers wanted visual images of children using chewing tobacco. Presumably, if they had come upon children *already* chewing tobacco, they could have collected visual images with impunity. However, this did not occur. According to the facts alleged by the State and upon

---

**9.** It is on this issue alone that The Utah Chapter of the Society of Professional Journalists has filed its *Amicus Curiae* brief, and on which it argued before us.

**10.** *See Smith v. Daily Mail Publ'g Co.,* 443 U.S. 97, 101–06, 99 S.Ct. 2667, 2670–72, 61 L.Ed.2d 399 (1979) (prohibiting prosecution of newspapers on First Amendment grounds when newspapers truthfully published alleged juvenile delinquent's name which was lawfully obtained); *Bigelow v. Virginia,* 421 U.S. 809, 829, 95 S.Ct. 2222, 2236, 44 L.Ed.2d 600 (1975) (prohibiting prosecution of newspaper editor on First Amendment grounds when he published advertisement of out-of-state organization's abortion services); *Colorado v. Denver Publ'g. Co.,* 198 Colo. 213, 597 P.2d 1038, 1039–40 (1979) (similar to *Smith* ).

**11.** In its brief, the Society of Professional Journalists cites to the Professional Journalism Organizations' Codes of Ethics. It is instructive and perhaps ironic that the code does not approve of such an activity. Among other things, the code provides that members of the Society should:

> Make certain that headlines, news teases ... photos, video, audio, graphics, sound bites and quotations do not misrepresent[,] .... oversimplify or highlight incidents out of context; avoid misleading re-enactments or staged news events; show compassion for those who may be affected adversely to news coverage .... using special sensitivity when dealing with children; guard against using audio or video material in a way that deceives the audience; not mislead the public by presenting as spontaneous news and material which is staged or rehearsed; recognize and acknowledge that photojournalists should at all times maintain the highest standards of ethical conduct; strive by example and influence to maintain high standards of ethical conduct free of mercenary considerations of any kind; and, strive for pictures that report truthfully, honestly and objectively.

Society of Professional Journalism Organizations' Code of Ethics, 6–9 (1996).

which the motions to dismiss are based, Krueger and Sawyers *asked* the children to chew tobacco so that it could be videotaped for the television news report.

¶ 33 It was in asking the children to chew the tobacco, if that is in fact what happened, that defendants stepped beyond the protections of the First Amendment and Article 1 Section 15. Simply put, representatives of the press may not encourage crime so that they my record it and report on it, and then claim that the prosecution amounts to an attempt by the government to restrain or abridge the freedom of the press.

¶ 34 Under the circumstances presented in this case, we find no imposition on the rights of free press protected by the First Amendment or by Article 1 Section 15. As important as a free and unfettered press is to the survival and prosperity of a free society, under these facts, defendants may not insulate their actions under the cloak of the First Amendment. Any fetters applied to defendants were invited by their alleged conduct, which the finder of fact at trial may well conclude was criminal.

## CONCLUSION

¶ 35 The trial court properly denied defendants' motions to dismiss. The conduct alleged to have been engaged in by the defendants falls within that described as contributing to the delinquency of a minor and proscribed by Utah Code Ann. § 78–3a–801(1)(a)(ii). The necessary intent required for conviction may be found by the trier of fact from the facts as alleged. Moreover, the statute is not unconstitutionally vague on its face for failing to define the term "delinquent." Finally, the defendants' acts are not protected by the First Amendment or Article 1 Section 15 of the Utah Constitution.

¶ 36 The order of the trial court is affirmed and the matter remanded for trial.

¶ 37 I CONCUR: JUDITH M. BILLINGS, Judge.

---

1. Although not a separate issue on appeal, the language in the information does not track section 78–3a–801(1)(a)(ii), as none of the counts charged allege that defendants caused the minors

**DAVIS, Judge (dissenting):**

¶ 38 I dissent from the majority opinion. It is my view that based on the plain language of section 78–3a–801(1)(a)(ii) of the Utah Code and the facts before us, defendants cannot be found to have caused the minors here to "become or remain delinquent." *See* Utah Code Ann. § 78–3a–801(1)(a)(ii) (1996). Therefore, I would reverse the trial court's denial of defendants' Motion to Dismiss the Information.

¶ 39 Section 78–3a–801(1)(a)(ii) provides that an adult may not engage in any conduct that "tends to cause minors to become or remain delinquent." *Id.* § 78–3a–801(1)(a)(ii). In this case, the information identifies the delinquent act as "us[ing] or possess[ing] tobacco or ... us[ing] tobacco on school property." [1] As the majority readily concedes, the State

> does not suggest that the reporters provided the tobacco or encouraged t[he] students not already in possession of tobacco that they also chew. The record reveals that the reporters simply asked students who were under the age at which it is legal to possess tobacco, and *who already had chewing tobacco in their individual possession*, to chew the tobacco so that the reporters could videotape the students chewing for inclusion in the news account of the anti-chewing assembly.

(Emphasis added.) Thus, because it is undisputed that the students already possessed the chewing tobacco, it is accordingly undisputed that defendants did not do anything to cause the students to "become ... delinquent." *See id.* § 78–3a–801(1)(a)(ii).

¶ 40 At issue, therefore, is whether by asking the students to chew the tobacco already in their possession, defendants caused the students to *"remain* delinquent." *See id.* § 78–3a–801(1)(a)(ii) (emphasis added). When interpreting statutory language, "[w]e presume that the Legislature used each word advisedly, and we give effect to each term

---

to "remain delinquent." Utah Code Ann. § 78–3a–801(1)(a)(ii) (1996). Defendants apparently did not object.

according to its ordinary and accepted meaning." *Utah State Bar v. Summerhayes & Hayden,* 905 P.2d 867, 871 (Utah. 1995). "Remain" is defined as "to stay in the same place" or "to continue unchanged in form, condition, status, or quantity." Webster's Third New International Dictionary 1919 (1986).

¶ 41 Applying this definition to the case before us, to provide a basis for charges under section 78–3a–801(1)(a)(ii), defendants' behavior must have caused the students to continue or remain in possession of the chewing tobacco. However, conspicuously absent from the State's allegations is an assertion that the students "who already had chewing tobacco in their individual possession" were in the process of dispossessing themselves of the same, but were encouraged by defendants to keep the tobacco. Regardless of whether the students were merely possessing the tobacco by having it on their person, or were possessing the tobacco by chewing it, the fact remains that the students were "remaining delinquent" without the help of defendants. Accordingly, there was no action by defendants that "tend[ed] to cause [the students] to ... remain delinquent." *See* Utah Code Ann. § 78–3a–801(1)(a)(ii) (1996).

¶ 42 The majority illogically expands the plain language of section 78–3a–801(1)(a)(ii) by stating (1) that the defendants' encouragement to chew the tobacco already possessed by the students caused the students to remain delinquent; and (2) that defendants' encouragement to chew the tobacco, as opposed to merely possessing it on their person, "prolonged the time in which the students were committing the violation, again causing the minors to 'remain delinquent.'" This analysis lacks support in both section 78–3a–801(1)(a)(ii) and in the record. The State has not alleged that any of the students already possessing the tobacco were in the process of disposing it, but retained the tobacco as a result of defendants' encouragement. Similarly, there are no allegations that any conduct by defendants prolonged the time in which the students were planning on possessing the tobacco. In fact, most of the students stated that, but for defendants, they would not have chewed the tobacco at

that time but would have waited until they were off school property. Accordingly, the students were in no way encouraged by defendants to prolong their delinquency, but were already determined to remain delinquent.

¶ 43 Because it is logically impossible to pursue these charges under the facts of this case, the majority suggests that since everybody knows the meaning of "contributing," "delinquency," "decency," "morality," and what is harmful to the "mental, moral or physical well-being of [a] child," it is acceptable to hold criminally responsible those who cause these statutorily undefined events to occur. Even if the majority did not go so far as to eliminate the need to allege a delinquent act, absent a statutory definition, one so charged would discover whether he or she actually contributed to another's delinquency only when the finder of fact makes that determination in any given case. Here, notwithstanding the allegation of a specific, ongoing delinquent act that was not caused or continued by the acts of defendants, the majority nonetheless concludes defendants could cause the juveniles to become or remain delinquent.

¶ 44 In support of its analysis, the majority relies almost exclusively on *State v. Tritt,* 23 Utah 2d 365, 463 P.2d 806 (Utah 1970). Arguably, *Tritt* stands as authority for nothing, let alone the proposition urged by the majority because the "main" opinion was, at best, merely a plurality, which does not amount to a binding decision. A plurality opinion is "not the law of this state." *State v. Anderson,* 910 P.2d 1229, 1234–35 n. 5 (Utah 1996) (plurality opinion) ("The plurality opinion ... represents the views of only two justices of this court and is therefore not the law of this state."); *see also State v. Giron,* 943 P.2d 1114, 1121 (Utah Ct.App.1997) (stating plurality opinion is not binding authority). In addition, the language relied upon by the majority was mere dicta, responding to the concerns expressed by the dissenters. Finally, the "main" *Tritt* opinion relied upon by the majority first declined to address the obvious constitutional vagueness problem because the issue was not raised in the lower court and the case was decided upon its facts.

The two subscribers to the "main" opinion then suggested the statute was valid for the reasons set out in the next preceding paragraph.

¶ 45 *Tritt* is of little use for a more compelling reason: our Legislature has, in effect, defined delinquency, so there is no need to resort to surprise allegations thereof.[2] Part 5, chapter 3a of Title 78 of the Utah Code is titled "Delinquency and Criminal Actions," and provides that "[p]roceedings in minor's cases are commenced by petition." Utah Code Ann. § 78–3a–502(1) (1996). To establish that a juvenile is within the jurisdiction of the juvenile court, the State's petition must include facts as provided in section 78–3a–104 of the Utah Code.[3] *See* Utah Code Ann. § 78–3a–504(3) (1996).[4] A pre-*Tritt* statutory definition of "delinquent child"[5] was incorporated into an earlier version of section 78–3a–104.[6] Thus, while the Legislature at the time of *Tritt* had removed the identifiers, "delinquent child," it incorporated substantially the same definition of delin-

quent/criminal acts into the statute setting out circumstances under which a juvenile comes within the jurisdiction of the juvenile court. The Legislature's later act of entitling Part 5 "Delinquency and Criminal Actions" as it applies to juveniles makes it even more apparent that a statutory definition exists regarding what amounts to delinquency or a delinquent act by a juvenile.

¶ 46 Because the information here *did* allege a delinquent act identified in section 78–3a–104, the majority's reliance on *Tritt* suggests that, when an adult is charged criminally, there is no need to include facts identified in section 78–3a–104, but, worse, the fact finder can convict when the undisputed evidence shows the defendants could *not* have caused the juvenile to remain delinquent in connection with the specific delinquent acts alleged in the information. Thus, to the extent the majority opinion relieves the State of the obligation to allege delinquency as established by our Legislature, or, worse,

**2.** The majority's reliance on *Tritt*'s "widespread usage" definition of "delinquency" is misplaced because of basic rules of statutory construction. "[W]ords and phrases used in a statute, if also defined by statute, must be construed according to that definition." *Utah State Bar v. Summerhayes & Hayden,* 905 P.2d 867, 871 (Utah 1995); *see also* Utah Code Ann. § 68–3–11 (1996) ("Words and phrases [if] defined by statute[ ] are to be construed according to such peculiar and appropriate meaning or definition."); *cf. State v. Winward,* 907 P.2d 1188, 1191 (Utah Ct.App. 1995) (stating only if statutory term is not defined by statute do "we look to its commonly understood meaning"). By examining the statutory scheme regarding the relationship between juvenile courts and juveniles, a statutory definition of "delinquent" is apparent.

**3.** Under the facts of this case, the only applicable section would be section 78–3a–104(1)(a), which provides: "(1) Except as otherwise provided by law, the juvenile court has exclusive original jurisdiction in proceedings concerning: (a) a minor who has violated federal, state, or local law or ordinance...." Utah Code Ann. § 78–3a–104(1)(a) (1996).

**4.** Section 78–3a–504 was recently repealed and reenacted. *See* Act of Juvenile Court Recodification, ch. 365, § 41, 1997 Utah Laws 1417. The present provision comparable to former section 78–3a–504 is found at Utah Code Ann. § 78–3a–109 (Supp.1998).

**5.** Section 55–10–6 of the Utah Code provided:

The words "delinquent child" include:

A child who has violated any state law or any ordinance or regulation of a subdivision of the state.

A child who by reason of being wayward or habitually disobedient is uncontrolled by his parent, guardian or custodian.

A child who is habitually truant from school or home.

A child who so deports himself as to injure or endanger the morals or health of himself or others.

Utah Code Ann. § 55–10–6 (1953).

**6.** Section 55–10–77 provided, in relevant part:

Jurisdiction of the juvenile court.—Except as otherwise provided by law, the court shall have exclusive jurisdiction in proceedings:

(1) Concerning any child who has violated any federal, state, or local law or municipal ordinance, or any person under twenty-one years of age who has violated any such law or ordinance before becoming eighteen years of age, regardless of where the violation occurred.

(2) Concerning any child:

. . .

(b) whose behavior or condition is such as to endanger his own welfare or the welfare of others; or

(c) who is a habitual truant from school, or who has run away from his home or who is otherwise beyond the control of his parent, custodian, or school authorities.

Utah Code Ann. § 55–10–77 (Supp.1967).

allows the fact finder to find delinquency from its sense of decency, morality, and what is harmful to the "mental, moral or physical well-being of the child," *see Tritt,* 463 P.2d at 809, then section 78–3a–801(1)(a)(ii) as applied to these defendants is clearly unconstitutionally vague. *See In re McCully,* 942 P.2d 327, 332 (Utah 1997) (stating, to withstand constitutional scrutiny, statutory language must be " ' "sufficiently explicit to inform the ordinary reader what conduct is prohibited" ' ") (quoting *State v. Frampton,* 737 P.2d 183, 192 (Utah 1987) (citation omitted)); *Board of Comm'rs of the Utah State Bar v. Petersen,* 937 P.2d 1263, 1267 (Utah 1997) (same); *Elks Lodges 719 & 2021 v. Department of Alcoholic Beverage Control,* 905 P.2d 1189, 1202 (Utah 1995) (stating statute "will be held unconstitutionally vague . . . if the terms of the law are so ambiguous that persons of ordinary intelligence are unable to determine whether their acts conform to the law"); *State v. Hall,* 905 P.2d 899, 901 (Utah Ct.App.1995) (same).

¶ 47 The majority unnecessarily and incorrectly attempts to breathe life into and extend a decision that has little value, precedential or otherwise; and worse, opens the door to prosecutions for offenses that are statutorily undefined. For the above reasons, I would hold that defendants' Motion to Dismiss the Information should be granted. Based on this disposition, I would not reach the other issues raised by defendants.